[No. C056820. Third Dist. Apr. 17, 2008.]

DONALD FOSTER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, ZURICH AMERICAN
INSURANCE COMPANY et al., Respondents.

COUNSEL

Ilija Cvetich for Petitioner.

Mullen & Filippi and Karen T. Dutton for Respondent Zurich American Insurance Company.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**CANTIL-SAKAUYE, J.**—In this case we consider the appropriate application of Labor Code section 4656, subdivision (c)(1) (hereafter section 4656(c)(1)),[1] which limits payment of workers' compensation temporary disability benefits for a single injury to 104 compensable weeks within a two-year period, to situations where multiple independent industrial injuries result in temporary disability.

■ Donald Foster was injured at work in two separate incidents in February and April 2005. Both injuries contributed to Foster's temporary disability. A workers' compensation judge (WCJ) concluded Foster was entitled to two periods of temporary disability indemnity under section 4656(c)(1) for his injuries. As to Foster's first injury, occurring in February 2005, the WCJ awarded him temporary disability benefits from April 2005, when he became temporarily disabled, until September 2006, when the first injury became permanent and stationary. As to Foster's second injury, occurring in April 2005, the WCJ awarded him temporary disability benefits commencing in September 2006, after the period attributable to his first injury ended. The Workers' Compensation Appeals Board (WCAB) granted reconsideration of the WCJ's award. The WCAB agreed that Foster was entitled to two periods of temporary disability, but disagreed that the periods should run consecutively. The WCAB concluded that "[w]here independent injuries result in concurrent periods of temporary disability, the 104[-]week/2[-]year limitation likewise runs concurrently." We issued a writ of review to consider this issue of first impression. We conclude the WCAB correctly applied the statute and shall affirm its decision.

### FACTUAL AND PROCEDURAL BACKGROUND

Foster was employed by C. Overaa and Company (Overaa) as a millwright when he sustained two industrial injuries.

---

[1] Hereafter, undesignated statutory references are to the Labor Code.

The first injury occurred on February 23, 2005, when an electrical panel fell on his right shoulder. He went to see a doctor and returned to work on a light duty assignment.[2] An MRI of Foster's right shoulder on March 29, 2005, showed a significant tear of indeterminate or uncertain age. It was recommended that Foster consider surgical treatment.

On April 13, 2005, Foster sustained a second injury when a 30-foot-long, 1,000-pound rake arm hit him, causing him to fall and hit his right shoulder and head. Foster's neck, right elbow and right shoulder were injured.

Foster was unable to work after April 13, 2005. Both the February and April injuries contributed to Foster becoming temporarily disabled at that time. Zurich American Insurance Company (Zurich), Overaa's workers' compensation carrier, began paying Foster temporary disability indemnity benefits on April 26, 2005, for the period beginning on April 14, 2005.

Foster underwent surgery on his right shoulder in September 2005. Dr. John H. Devor saw Foster in March 2007 as an agreed medical examiner. Devor opined Foster's right shoulder and right elbow reached maximal medical improvement by September 2006. Devor indicated Foster's neck condition would not reach maximal medical improvement until after surgery or a decision not to have surgery.

Zurich stopped paying Foster temporary disability benefits after April 14, 2007, based on section 4656(c)(1), which limits benefits for a single injury causing temporary disability to 104 compensable weeks within a period of two years from the date of the commencement of temporary disability payments.

In subsequent workers' compensation proceedings, the WCJ determined that Foster was entitled to two periods of temporary disability benefits. The WCJ awarded Foster temporary disability benefits for his first injury from April 14, 2005, until September 25, 2006, when his right shoulder and right elbow reached maximal medical improvement. The WCJ awarded Foster temporary disability benefits for his second injury starting on September 26, 2006, after the temporary disability for the first injury ended, less credit for benefits already paid and attorney fees. The WCJ reasoned Foster was entitled to the consecutive periods of indemnity because he could not receive temporary disability payments concurrently for his two injuries.

---

[2] Foster testified at the hearing before the WCJ that he took a few days off after sustaining this injury. However, neither the findings and award of the WCJ nor the decision of the WCAB includes any mention of this time off. The record does not establish when or for how many days Foster was off or whether he lost any wages as a result and Foster does not explain in his petition how any such time off impacts the issues presented in this case.

The WCAB granted Zurich's petition for reconsideration. According to the WCAB, the WCJ properly concluded Foster was entitled to two periods of temporary disability indemnity pursuant to section 4656(c)(1) because he suffered two injuries. The WCAB also agreed with the WCJ that Foster could not receive temporary disability indemnity concurrently for both injuries "in the sense that [Foster] cannot collect double benefits." However, the WCAB concluded the WCJ erred in determining the period of temporary disability indemnity for the second injury ran after the period attributable to the first injury ended.

The WCAB stated: "[T]he two periods of entitlement to temporary disability indemnity do run concurrently if applicant is temporarily disabled from the two injuries at the same time. To the extent that those periods of temporary disability occur contemporaneously, the 104-week/2[-]year period is running for both injuries. Where independent injuries result in concurrent periods of temporary disability, the 104[-]week/2[-]year limitation likewise runs concurrently. To determine the impact of section 4656, in a case involving multiple injuries, the evidence must be examined to determine whether any periods of temporary disability are distinct and independent, staggered, or entirely overlapping." In this case, both injuries contributed to Foster's temporary disability. "Thus, [Foster's] temporary disability resulting from both injuries began on April 14, 2005." Foster's period of temporary disability for his first injury ran from April 14, 2005, through September 12, 2006. Foster's period of temporary disability for his second injury ran from April 14, 2005, until it was exhausted under the 104-week/2-year limitation of section 4656(c)(1), completely overlapping the period of temporary disability for the first injury. As the first payment of temporary disability benefits was made by Zurich on April 26, 2005, the WCAB amended the findings and award of the WCJ to find Foster entitled to additional temporary disability indemnity under section 4656(c)(1) for the period of April 15, 2007, to April 26, 2007.

## DISCUSSION

### The WCAB Correctly Applied Section 4656(c)(1) in This Case

We begin by noting that in our review of this matter the WCAB's findings on questions of fact are conclusive where supported by substantial evidence. (§§ 5952, 5953; *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290 [135 Cal.Rptr.2d 665, 70 P.3d 1076].) The interpretation of labor statutes and their applicability to a given situation, however, are questions of law subject to our de novo review. (*Ibid.*; *Rex Club v. Workers' Comp. Appeals Bd.* (1997) 53 Cal.App.4th 1465, 1470–1471

[62 Cal.Rptr.2d 393]; *Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26] (*Western Growers*).)

■ In construing a statute, our primary task is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med*); see *Sacramento County Off. of Education v. Workers' Comp. Appeals Bd.* (2000) 82 Cal.App.4th 107, 113 [97 Cal.Rptr.2d 699].) To determine legislative intent, we begin with the language of the statute, giving the words their usual and ordinary meaning. (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350]; *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) We read the language in context (*Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 227 [64 Cal.Rptr.3d 407, 165 P.3d 133]) and in harmony with the statutory framework as a whole. (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1194 [81 Cal.Rptr.2d 521, 969 P.2d 613]; *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1427 [118 Cal.Rptr.2d 105].) Where uncertainty exists in the language, we give consideration "to the consequences that will flow from a particular interpretation. [Citation.]" (*Dyna-Med, supra,* at p. 1387.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Ibid.*)

■ " 'We liberally construe all aspects of workers' compensation law in favor of the injured worker.' [Citation.] '[T]he so-called "liberality rule," ' however, (which is found in section 3202) 'cannot supplant the intent of the Legislature as expressed in a particular statute.' [Citation.] If the Legislature's intent appears from the language and context of the relevant statutory provisions, then we must effectuate that intent, 'even though the particular statutory language "is contrary to the basic policy of the [workers' compensation law]." ' [Citation.]" (*Kopping v. Workers' Comp. Appeals Bd.* (2006) 142 Cal.App.4th 1099, 1106 [48 Cal.Rptr.3d 618].)

We are aided in our task by the WCAB. "As the constitutional agency charged with enforcement and interpretation of the Workers' Compensation Law, the [WCAB's] contemporaneous construction of that law, while not necessarily controlling, is entitled to great weight, and courts will not depart from its construction unless it is clearly erroneous or unauthorized." (*Pinkerton, Inc. v. Workers' Comp. Appeals Bd.* (2001) 89 Cal.App.4th 1019, 1029 [107 Cal.Rptr.2d 787]; accord, *Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 516 [90 Cal.Rptr.2d 486].)

The WCAB's construction of section 4656(c)(1) in this case is not clearly erroneous or unauthorized. In fact, its construction accords with the language, context, and evident legislative purpose of the statute.

The language of section 4656(c)(1) is as follows: "Aggregate disability *payments for a single injury* occurring on or after April 19, 2004, *causing temporary disability* shall not extend for more than 104 compensable weeks within a period of two years *from the date of commencement of temporary disability payment.*"[3] (Italics added.) Thus, the language itself ties the temporary disability indemnity limitations period for any single injury to the temporary disability caused by that injury and starts the limitations period on the date of commencement of the temporary disability payments for such disability.

Here, in a factual finding conclusive on this court, the WCJ and the WCAB determined Foster became unable to work on April 14, 2005, as a result of both his first injury and second injury, i.e., both injuries caused his temporary disability. Foster was entitled to recover temporary disability indemnity for both injuries from April 14, 2005, because his temporary disability continued for more than 14 days. (§ 4652.) Zurich began paying Foster temporary disability benefits on April 26, 2005, for the period beginning on April 14, 2005. (§ 4650.) As the purpose of temporary disability benefits is to replace lost earnings, not to compensate for an incapacity to work and for physical impairment (that is the function of permanent disability indemnity) (*Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 294 [285 Cal.Rptr. 86, 814 P.2d 1328]; *Western Growers, supra,* 16 Cal.App.4th at p. 235), Foster was not entitled to receive a double amount of temporary disability benefits. He was entitled to only one amount to substitute for his lost wages. However, under the facts here, the temporary disability benefit he received was due to each of his injuries because they both caused his temporary disability. The limitations period provided by section 4656(c)(1) started for both injuries on April 26, 2005, when Zurich began payments.

There is nothing in the language of section 4656(c)(1) suggesting the limitations period for a single injury causing temporary disability should be tolled for any period during which a worker is entitled to temporary disability

---

[3] We recognize the language of section 4656(c)(1) differed slightly at the time of the proceedings before the WCJ and WCAB in this case. In 2007 the statute was amended to specify subdivision (c)(1) was applicable to injuries occurring on or after "April 19, 2004," instead of to injuries occurring on or after "the effective date of subdivision (c)." (Stats. 2007, ch. 595.) As April 19, 2004, was the effective date of subdivision (c) (Stats. 2004, ch. 34, § 49; see *Rio Linda Union School Dist. v. Workers' Comp. Appeals Bd.* (2005) 131 Cal.App.4th 517, 521 [31 Cal.Rptr.3d 789]), the 2007 amendment did not effect a substantive change in subdivision (c)(1). For clarity, we choose to reference the amended statute that includes the specific date.

benefits based on another injury. There is no language in the statute suggesting the limitations period will not run concurrently where multiple injuries cause an overlap, either partial or complete, during periods of temporary disability.

Nor have we found anything in the context of section 4656(c)(1) that suggests a different interpretation is required where multiple injuries result in temporary disability. In fact, the history of section 4656 demonstrates a clear legislative intent to provide a reliable, defined time limit on an employer's liability for temporary disability indemnity.

Prior to 1979, aggregate disability payments for a single injury causing temporary disability were limited to 240 compensable weeks within a period of five years "from the date of the injury." (Former § 4656, as added by Stats. 1959, ch. 1189, § 12, p. 3279.) In 1978 the Legislature amended section 4656 to remove the limitations period for temporary total disability payments for a single injury occurring on or after January 1, 1979, while continuing the 240-week/five-year limitation for temporary partial disability payments. Again, the limitations period was "from the date of the injury." (Former § 4656 as amended by Stats. 1978, ch. 937, § 1, p. 2913.) Then in 2004, as part of the sweeping overhaul of the workers' compensation laws effected by Senate Bill No. 899 (2003–2004 Reg. Sess.), the former provisions of section 4656 were designated as subdivisions (a) and (b) while subdivision (c)(1) was added to impose an even more restrictive 104-week/2-year limitation on temporary disability indemnity payments applicable to both partial and total temporary disability for a single injury occurring on or after April 19, 2004. (Stats. 2004, ch. 34, § 29.) Subdivision (c)(2) was added to continue the 240-week/five-year limitation for an employee who suffers from certain specifically enumerated injuries or conditions. (Stats. 2004, ch. 34, § 29.)

Senate Bill No. 899 (2003–2004 Reg. Sess.) was enacted as urgency legislation "[i]n order to provide relief to the state from the effects of the current workers' compensation crisis at the earliest possible time." (Stats. 2004, ch. 34, § 49.) It was "designed to alleviate a perceived crisis in skyrocketing workers' compensation costs." (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1329 [57 Cal.Rptr.3d 644, 156 P.3d 1100].) This makes it likely the Legislature intended the new limitations period in section 4656(c)(1) to be a significant narrowing of liability. If we were to accept the interpretation of the WCJ, however, the employer's responsibility, through its workers' compensation insurance carrier, for temporary disability indemnity could be extended unpredictably for an undefined number of payments and years in situations where multiple independent injuries result in staggered or overlapping periods of temporary disability. We do not believe such consequence was intended by the Legislature.

■ In conclusion, we agree with the WCAB that "[w]here independent injuries result in concurrent periods of temporary disability, the 104[-]week/two[-]year limitation likewise runs concurrently."

## DISPOSITION

The WCAB's order granting reconsideration and decision after reconsideration is affirmed.

Raye, Acting P. J., and Morrison, J., concurred.

Petitioner's petition for review by the Supreme Court was denied June 25, 2008, S163086. George, C. J., and Corrigan, J., did not participate therein.