Filed 6/16/14

**CERTIFIED FOR PUBLICATION**


# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----


| | |
|---|---|
| In re ABBIGAIL A. et al., Persons Coming Under the Juvenile Court Law. | C074264 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. Nos. JD232871 & JD232872) |
| Plaintiff and Appellant, | |
| v. | |
| JOSEPH A. et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Sacramento County, Paul L. Seave, Judge.  Reversed with directions.

John F. Whisenhunt, County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Appellant.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendants and Respondents.


1

After a combined hearing in May 2013 (Welf. & Inst. Code, §§ 355, 358),[1] the juvenile court found that minors Abbigail A. (born in 2008) and Justin A. (born in 2007) were subject to its jurisdiction (the bases for which are not pertinent to this appeal). It placed the minors in the custody of their maternal grandmother. At a prehearing status conference, it directed the Sacramento County Department of Health and Human Services (DHHS) to take active efforts to enroll the minors in the tribe of their paternal great-aunt and great-grandmother (the Cherokee Nation of Oklahoma, which had stated the minors were not members but were eligible for membership) even though the minors' biological and presumed father Joseph A. was not yet enrolled as a tribe member.

The basis for this directive was the provision in both rule 5.482(c) and rule 5.484(c)(2) of the California Rules of Court[2] that includes this duty among the active efforts an agency must make on behalf of minors who are *eligible* for tribal membership but who are *not* "Indian children" as defined in the federal Indian Child Welfare Act (ICWA) and state law.[3] The definition of "Indian children" in the ICWA and state law

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

[2]  Undesignated rule references are to the California Rules of Court.

[3]  Rule 5.482(c) states, "If after notice has been provided as required by federal and state law a tribe responds indicating that the child is eligible for membership if certain steps are followed, the court must proceed as if the child is an Indian child and direct the appropriate individual or agency to provide active efforts under rule 5.484(c) to secure tribal membership for the child."

Rule 5.484(c) states, "In addition to any other required findings to place an Indian child with someone other than a parent or Indian custodian, or to terminate parental rights, the court must find that active efforts have been made, in any proceeding listed in rule 5.480, to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and must find that these efforts were unsuccessful.

"(1)  The court must consider whether active efforts were made in a manner consistent with the prevailing social and cultural conditions and way of life of the Indian child's tribe.

2

requires that minors be either (a) members of a tribe themselves or (b) biological children of members of a tribe and eligible for tribal membership. (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a) [the ICWA definition of "Indian child" will apply under state law (hereafter § 224.1(a))].)

DHHS appeals (§ 395),[4] challenging the validity of the two rules on various grounds. It contends federal law preempts the extension of services in the two rules to minors who are not Indian children under the ICWA; the rules are inconsistent with the definition of Indian children entitled to ICWA protections under section 224.1(a); and the rules are also inconsistent with the active efforts required under section 361.7. It is sufficient for us to agree with DHHS on its second point: These two rules are inconsistent with the legislative definition of the class of protected Indian children, and therefore the Judicial Council lacked authority to expand the definition. Accordingly, we do not need to reach the other two claims of DHHS (or the associated arguments). We will reverse the judgment with directions to enter a new judgment that does not provide the minors with any of the protections for an Indian child under ICWA or state law, until such time that Joseph A. or the minors have in fact become enrolled members of the Cherokee Nation of Oklahoma.

---

"(2) Efforts to provide services must include pursuit of any steps necessary to secure tribal membership for a child if the child is eligible for membership in a given tribe, as well as attempts to use the available resources of extended family members, the tribe, tribal and other Indian social service agencies, and individual Indian caregivers."

[4] Preparation of the record and briefing was completed in March 2014.

## FACTUAL AND PROCEDURAL BACKGROUND

In light of the issue on appeal, there is only a limited amount of background we need to add to the introduction.  In March 2012, mother Jamie S.[5] had agreed to informal supervision from DHHS.  In August 2012, she signed authorization for her mother to be the voluntary caretaker of the minors.  DHHS filed the instant petitions in December 2012.

At the initial hearing (§ 319), Jamie S. disclaimed any Indian heritage and stated her belief that Joseph A. did not have any Indian heritage as well.  However, the father appeared at a January 2013 status conference, where he informed the court that he believed he was the biological father of the minors and his maternal grandmother was an Indian; he provided the name and address of his maternal aunt, who was a registered member of the tribe and kept track of the family tree, as a person who was better informed on the issue.  The juvenile court determined at this time that Joseph A. was the biological and presumed father of the minors.

The Cherokee Nation of Oklahoma sent a letter to DHHS in late January 2013 that confirmed the minors were descendants of tribal members (Joseph A.'s maternal grandmother; his mother, unlike his aunt, had never enrolled) and eligible for tribal membership, but neither the minors nor Joseph A. were enrolled members.[6]  The Cherokee Nation declined to intervene in the proceedings unless Joseph A. or the minors completed the application forms that it had enclosed.  The tribe also "recommended" the

---

[5]  Appellate counsel for Jamie S. has notified us that she will not be filing a respondent's brief on her client's behalf (who was indifferent to the application of ICWA protections in these proceedings).

[6]  The United Keetoowah Band of Cherokee Indians in Oklahoma and the Eastern Band of Cherokee Indians notified DHHS that the minors were not descendants of any member of their tribes.

application of ICWA protections to the minors from the outset of the proceedings in order to avoid any delays if Joseph A. or the minors became enrolled members.

On the basis of this letter, DHHS argued at the February 2013 status conference that the juvenile court should not apply ICWA protections because the minors were not Indian children. Counsel for Joseph A. stated that he intended to apply for tribal membership. The juvenile court expressed its intent to treat the minors as if they were Indian children in order to prevent relitigation in the event they or their father were to become tribal members, inviting DHHS to file a "reconsideration" brief as to whether the juvenile court was precluded as a matter of law from proceeding in this manner. Shortly afterward, the Cherokee Nation of Oklahoma sent a followup letter noting that it had not received any completed application forms and enclosing new ones.

At the March 2013 status conference, the juvenile court directed counsel to make reasonable efforts to enroll Joseph A. and the minors in the tribe. DHHS noted that in an abundance of caution it was scheduling an Indian tribal expert for the combined hearing (jurisdiction/disposition) in the event it was necessary. The juvenile court then continued the proceedings.

At the April 2013 status conference, the juvenile court concluded it was required to treat the eligible minors as Indian children under rules 5.482(c) and 5.484(c)(2) and denied DHHS's motion for reconsideration. It therefore directed DHHS to take active efforts to enroll the minors, authorizing it to release their birth certificates to the tribe as part of the application process. Joseph A. noted that he had sent the necessary documents to the tribe for his own enrollment and was awaiting his enrollment number.

At the May 2013 combined hearing, Joseph A. noted at the outset that his tribal application was stalled because the tribe wanted a state-certified copy of his mother's birth certificate rather than the one he had submitted, and because an update to the tribe's registration system had prevented access for six weeks. The juvenile court then received

5

testimony from an ICWA expert who noted the tribe would not act on the membership applications of the minors until Joseph A. was enrolled. (§ 224.6.) The court sustained the allegations of the petitions; it also made findings pursuant to the ICWA by clear and convincing evidence (incorporating the Indian expert's testimony) that continued parental custody of the minors would likely result in serious emotional or physical damage (§ 361, subd. (c)(6)), that reasonable efforts had been made to prevent the breakup of an Indian family (§ 361, subd. (d) & § 361.7, subd. (a)), and that the placement of the minors met the preferences of ICWA (§ 361.31). The court set six- and 12-month review hearings (§ 366.21, subds. (e) & (f)) for November 2013 and February 2014.[7]

## DISCUSSION

The interpretation of statutes and court rules is a question of law that we review de novo. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81; *California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15, 22 (*Court Reporters*).)

Under our state charter, the Judicial Council is authorized to adopt rules of court that are "not . . . inconsistent with statute." (Cal. Const., art VI, § 6, subd. (d).) A rule of court inconsistent with legislative *intent* is invalid even absent an express legislative prohibition on the promulgation of a rule on the subject, and a rule can also be inconsistent even though it can operate harmoniously with a statute. (*Court Reporters*,

---

[7] The parties have not given us any indication that either of these hearings, if they took place as scheduled, have any bearing on this appeal. Nor, apparently, have Joseph A. or the minors given any notice that they have completed the tribal enrollment process. Even if the treatment of the minors as being subject to the ICWA is moot, however, we would nonetheless exercise our discretion to address the issue of the validity of the two rules because it is a matter of broad public importance likely to recur in the future, yet evade review in light of the slow pace of appellate proceedings lagging behind the expedited pace of dependency proceedings. (*In re Raymond G.* (1991) 230 Cal.App.3d 964, 967; *In re Jody R.* (1990) 218 Cal.App.3d 1615, 1622.)

6

*supra*, 39 Cal.App.4th at pp. 23, 25-26 [rejecting Judicial Council's claims to the contrary]; *id*. at p. 22 [Judicial Council's rulemaking authority subordinate to Legislature]; accord, *In re Robin M.* (1978) 21 Cal.3d 337, 346; cf. *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011 [courts not bound by Judicial Council's interpretation of statute].)

In 2006, the Legislature incorporated the provisions of the ICWA into California law. (Stats. 2006, ch. 838, §1, pp. 6535-6536 [summarizing changes].) This was intended to facilitate increased compliance. (*In re W.B.* (2012) 55 Cal.4th 30, 52 (*W.B.*).) As part of this process, it added section 224.1. Section 224.1(a) provides, "As used in this division [(§ 200 et seq.)], unless the [statutory] context requires otherwise, the term[] . . . 'Indian child' . . . shall be defined as provided in [title 25 United States Code] Section 1903 of the [ICWA]." We thus first turn to the federal definition of the term.

ICWA is very specific in limiting the definition of Indian child to children who are tribal members or are children of tribal members (25 U.S.C. § 1903(4)), and this was *not* an inadvertent definitional choice. "The legislative history of the ICWA shows that Congress considered, but ultimately rejected, an expansive definition of 'Indian child' . . . . [A]n earlier draft of the ICWA did not define 'Indian child,' but rather defined 'Indian' as 'any person who is a member of *or who is eligible for membership in a federally recognized Indian tribe*.' [Citation.] . . . But the final draft of the statute limited membership [to] those children who were *eligible* for membership because they had a parent who is a member." (*Nielson v. Ketchum* (10th Cir. 2011) 640 F.3d 1117, 1124 (*Nielson*) [tribe cannot broaden definition of tribal members in order to invoke ICWA protections on behalf of children not otherwise within definition of Indian child]).

This restricted definition of Indian child undoubtedly reflects the understanding of the United States Congress about the limits on its authority over Indian affairs, and the issues of equal protection that would be raised had it employed racial rather than political

classifications. (See, e.g., *In re Vincent M.* (2007) 150 Cal.App.4th 1247, 1267 [choice of political rather than racial affiliation avoids issue of equal protection]; *In re A.W.* (Iowa 2007) 741 N.W.2d 793, 811-812 [noting boundary of congressional authority over Indian affairs extends only to tribal Indians and noting failed 1980's amendments to ICWA to expand definition to include Indians as a racial classification without reference to tribal membership had been decried as racist, before concluding state's racial definition of Indian child violated equal protection]; *In re Adoption of C.D.* (N.D. 2008) 751 N.W.2d 236, 244 [ICWA definition reflects limitation on congressional authority to tribal Indians]; *In re A.B.* (N.D. 2003) 663 N.W.2d 625, 636 [no equal protection violation under ICWA because classification political].)

As a matter of statutory interpretation, we are directed to presume that the Congress intended uniform national application of definitions in federal statutes in the absence of evidence of intent to the contrary. (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 43 [104 L.Ed.2d 29, 43] (*Holyfield*) [traditional definition of "domicile" used in ICWA for purposes of exclusive tribal jurisdiction over Indian children domiciled *on* reservation is not subject to more expansive state definition].)

That the Congress intended this limited definition to apply uniformly is not called into question by the declaration in title 25 United States Code section 1902 that ICWA establishes "minimum Federal standards."[8] This broad language arises in the context of the two subjects of the determination of the *removal* and *placement* of Indian children,

---

[8] In whole, the statute provides, "The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902.)

and the provision of *assistance to tribes* with *child and family service programs*. Section 1902 does not purport to describe the definition of "Indian child" itself as a class upon which states may expand. (*State ex rel. State Office for Services to Children & Families v. Klamath Tribe* (2000) 170 Or. App. 106, 114 [11 P.3d 701, 705] [grammar of statute not susceptible of interpretation that definition is a minimum standard].) By the same token, the ICWA authorization for a state to provide a higher standard of protection for the rights of parents or Indian custodians of an Indian child in custody proceedings than are provided under this subchapter (25 U.S.C. § 1921 [referencing 25 U.S.C. § 1911 et seq.]) does not have any bearing on the definition of "Indian child," a term which does not appear in the referenced subchapter.

Furthermore, broad and vague statements of purpose cannot overcome the plain language of express statutory provisions. "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law. Where, as here, 'the language of a provision . . . is sufficiently clear in its context and not at odds with the legislative history, . . . "[there is no occasion] to examine the additional considerations of 'policy' . . . that may have influenced the lawmakers in their formulation of the statute." ' " (*Rodriguez v. United States* (1987) 480 U.S. 522, 525-526 [94 L.Ed.2d 533, 538] (*Rodriguez*); accord, *Foster v. Workers' Comp. Appeals Bd.* (2008) 161 Cal.App.4th 1505, 1510 (*Foster*) [remedial purpose of law cannot supplant legislative intent expressed in particular statute].)

With all this in mind, we return to discerning legislative intent in the enactment of section 224.1(a). If we assume (as we must) legislative recognition of the presumption in favor of uniform national application of federal law, of the evidence that the Congress in

9

fact did not intend a broader definition, and of the constitutional implications of giving a broader definition to the class of Indian children (which would allow tribal intervention in the lives of minors on a racial rather than a political basis), it makes as "little sense" here as it did in *W.B.* to interpret the *express incorporation* of the ICWA definition as allowing for the application of ICWA provisions to a broader class of children. (*W.B.*, *supra*, 55 Cal.4th at pp. 50-55, 57 [invalidating rule of court applying ICWA procedures in delinquency proceedings involving criminal conduct because statute chose to employ ICWA definition, which excludes such proceedings from its reach].)

It is true, as DHHS commendably admits, that the Legislative Counsel's summary of the 2006 legislation described it as an overhaul of "various provisions of state law to, among other things, apply to certain children who do not come within the definition of an Indian child [under the ICWA]" (Legis. Counsel's Dig., Sen. Bill No. 678, 6 Stats. 2006 (2005-2006 Reg. Sess.), Summary Dig., p. 465), and we generally presume the Legislature acted in accord with Legislative Counsel's summary (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1170). However, this is an abbreviated summary of a 69-page bill amending the Family and Probate Codes in addition to the Welfare and Institutions Code. At best, it is a vague reference that is not strong evidence of legislative intent with respect to the intent behind section 224.1(a) *in particular*. Furthermore, as with the statement of legislative findings and declarations set forth in section 224,[9] these broad pronouncements do not prevail over the intent to be

---

[9] Section 224 provides, in relevant part, "the State of California has an interest in protecting *Indian children* who are members of, or are eligible for membership in, an Indian tribe" and encouraging placements that "assist the child in establishing . . . a *political* . . . relationship with the . . . tribal community" (§ 224, subd. (a)(1), italics added); subdivision (a)(2) states, "It is in the interest of *an Indian child* that the child's membership . . . and connection to the tribal community be encouraged and protected" (italics added); and subdivision (d) contains a broad paraphrase of 25 United States Code section 1921, allowing application of the highest standard of protection for rights of parent or of Indian custodian of *Indian child* under any law in any case.

gleaned from the specific legislative act of incorporating the ICWA definition of "Indian child." (*Rodriguez*, *supra*, 480 U.S. at pp. 525-526 [94 L.Ed.2d at p. 538]; *Foster*, *supra*, 161 Cal.App.4th at p. 1510; cf. *W.B.*, *supra*, 55 Cal.4th at p. 56 [legislative history does not have any express indication of intent to expand definition of child custody proceeding].) Indeed, subdivision (c) of section 224, which declares that an Indian tribe's determination of a child's membership to be "a significant *political* affiliation with the tribe" (italics added) that requires application of the ICWA, is limited to children who are under 18 and who are members or biological children of members—i.e., the ICWA definition of Indian child. This qualification would not be present if these findings in fact represented *any* intent on the Legislature's part to allow a broader definition of Indian child.

There is a surprising dearth of authority on this issue, since (according to the DHHS brief) the 2010 census data show that California has the largest Indian population in the United States. Neither of the first two cases that the parties cite have any extended analysis.

*In re Jose C.* (2007) 155 Cal.App.4th 844, 849, antedating the 2008 promulgation of the two rules at issue, held only that ICWA procedures (other than notice) do not apply to minors who are eligible for membership but are not children of a member, and that authority did not exist "for the proposition that a court must enroll eligible minors in a tribe or . . . has the authority to do so." In a long and complex case, *In re C.B.* (2010) 190 Cal.App.4th 102 held (among other issues) that authority was lacking to delay a hearing on permanency planning in order to allow eligible minors to *become* members of a tribe and qualify for the "Indian child" exception to termination of parental rights (also concluding the parents had failed to produce sufficient evidence to qualify for the exception in any event). (*Id*. at pp. 132-133.) In response to a claim that the agency failed to make sufficient active efforts to enroll the minors (in accord with § 361.7's

11

mandate to prevent the breakup of an Indian family), the court mused that rules 5.482(c) and 5.484(c)(2) *might* be inconsistent with statute because they extended the duty to take active efforts to something not included in the statute, and included minors who were not Indian children (*C.B.*, *supra*, 190 Cal.App.4th at pp. 134-135 & fn. 11), but found "[i]n any event" that the agency had "made reasonable efforts to pursue 'any steps necessary to secure tribal membership for a[n eligible] child . . . .' " (*Id*. at p. 136.)  Neither case thus provides much in the way of guidance for our review of this issue.

This leaves *In re Jack C.* (2011) 192 Cal.App.4th 967 (*Jack C.*), which involved a petition to transfer dependency jurisdiction to a tribe pursuant to section 305.5, available only if there are Indian children domiciled on the tribe's reservation (a provision giving effect to the ICWA statute at issue in *Holyfield*).  (*Jack C.*, at p. 971.)  The parents argued the juvenile court erred in denying the petition on the ground that the minors were not Indian children within the meaning of the ICWA, claiming rule 5.842(c) required the court to proceed "as if" the minors were Indian children.  (*Jack C.*, at p. 976.)  The Court of Appeal acknowledged the children were not enrolled members at the time of the proceedings but concluded the children "were Indian children within the meaning of the federal and state definitions of 'Indian child.' " (*Id*. at p. 977.)  In reaching its conclusion, the court alluded to broad statements (§ 224, subd. (d); 25 U.S.C. § 1921) that—as discussed above—do not have any bearing on the issue (*Jack C.*, at pp. 977-979, 981); it noted that *the Indian tribe* had found the minors to be Indian children despite the fact that neither they nor their parents were members at that time (*id*. at pp. 979-980 [quoting tribal official who acknowledged the minors were not yet enrolled as members of the tribe]);[10] and then—incorrectly, in our view—admixed the conclusive nature of a tribe's determination of a minor's *membership or eligibility for membership* (§ 224.3,

---

[10]  We note this is the exact action *Nielson* proscribed, though we do not weigh in on the issue.  (*Nielson*, *supra*, 640 F.3d at p. 1124.)

12

subd. (e)(1)) with the issue of whether a minor is *an Indian child under the ICWA*. (*Jack C.*, at p. 980.)[11]  It also concluded the ICWA did not preempt rule 5.482 (*Jack C.*, at pp. 981-982), which as we have noted is not an issue we need to reach.  As our approach to the validity of the two rules under state law is at odds with *Jack C.*, we do not find it persuasive.  Moreover, unlike the tribe in *Jack C.*, the Cherokee Nation of Oklahoma has abjured treating the minors as if they were near-members.

Joseph A. suggests that the Legislature has implicitly approved the holding of *Jack C.* because it has not taken any action to abrogate it.  However, legislative inaction over a period of only a few years in response to a judicial decision or an administrative action is a rather " 'weak reed upon which to lean' " in divining intent.  (*Troy Gold Industries, Ltd. v. Occupational Safety & Health Appeals Bd.* (1986) 187 Cal.App.3d 379, 391, fn. 6, cited with approval in *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156.)  We accordingly decline to ascribe any significance to this legislative silence.

We therefore conclude rules 5.482(c) and 5.484(c)(2) are inconsistent with state law and consequently could not authorize the application of the ICWA in the present proceedings to minors who are not Indian children within the meaning of the ICWA.  This conclusion does not require us to address the additional DHHS arguments that the ICWA preempts these rules, or that including enrollment among active efforts required under section 361.7 is also inconsistent with state law.  DHHS does not claim that the application of these rules to the combined hearing was prejudicial with respect to either the jurisdictional or dispositional findings, but requests we reverse the judgment and

---

[11]  We note *Jack C.*, although it invoked section 224, subdivision (c) in support of its conclusion that the children were Indian children, did not acknowledge the limitation in this provision to Indian children *as defined in the ICWA*.  (*Jack C.*, *supra*, 192 Cal.App.4th at p. 980.)

13

remand with directions to enter a new judgment that omits any duty to comply with the ICWA in subsequent proceedings.  We shall do so.

## DISPOSITION

The judgment is reversed with directions to enter a new judgment that does not direct the application of ICWA provisions to the minors, until such time as they may qualify as Indian children under the ICWA and California definitions of the class. (*CERTIFIED FOR PUBLICATION*.)


          BUTZ          , J.


We concur:


     BLEASE     , Acting P. J.


     HOCH     , J.