Filed 10/5/16  P. v. Ortiz CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C079847 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F05800) |
| v. | |
| RICARDO ABEL ORTIZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Ricardo Abel Ortiz of unlawfull driving or taking of a vehicle (Veh. Code, § 10851) and driving on a suspended license (Veh. Code, § 14601.1). The trial court sentenced defendant to a split term of 18 months in county jail and 18 months of mandatory supervision.

On appeal, defendant contends the prosecutor committed prejudicial misconduct during closing argument that was not cured by the trial court's admonition.  He also asserts that his Vehicle Code section 10851 conviction is eligible for misdemeanor

1

sentencing pursuant to Penal Code section 490.2. (Unless otherwise set forth, stautory references that follow at to the Penal Code.) We affirm the judgment.

BACKGROUND

*The Crimes*

Around July 25, 2013, Rafael Zepeda Garcia's blue 1989 Nissan Pathfinder was taken from the front of his Sacramento County home between 8:30 p.m. and 5:00 a.m. He had the keys for the truck when it was taken. Garcia's wife Susana Ortiz saw another person driving her husband's truck after it was taken.

On September 5, 2013, California Highway Patrol Officer John Rosendale stopped Garcia's Pathfinder on Stockton Boulevard at around 3:00 a.m. The truck was running even though there was no key in the ignition. Defendant, the driver, told Officer Rosendale that his driver's license was suspended. After determining the truck had been reported stolen, Officer Rosendale arrested defendant. A search of the truck found a pair of scissors and a screwdriver on the passenger seat.

Officer Rosendale obtained a *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] waiver from defendant and questioned him about the Pathfinder. Defendant admitted using the scissors to start it. Defendant also told Officer Rosendale that he never knew of a motor vehicle being started with anything other than a key unless it was stolen.

The truck was eventually returned to Garcia. The tailgate had been removed, as well as the heater, the air conditioner, and Garcia's tool boxes. The driver's side door handles were broken.

The prosecution introduced evidence of prior Vehicle Code section 10851 offenses under Evidence Code section 1101, subdivision (b). In 1995, Hat Tui Vu owned a 1983 Buick Century. Police knocked on her door one day to tell her that her car had been stolen and recovered. The car's lock and ignition were broken.

2

On February 4, 1995, Sacramento County Sherriff's Sergeant Todd Gooler saw defendant driving the Buick. The condition of the car was consistent with it being stolen, as there was no key in the ignition, the steering locking mechanism was broken, and the left side of the steering column was broken off. Defendant said the car belonged to his aunt. When asked for his aunt's name, defendant looked at the passengers and asked what was her name. Defendant later acknowledged taking the car.

*Defense Evidence*

Branndon Estrada knew defendant's brother Jonas Ortiz (Ortiz) through an ex-girlfriend. He had briefly lived with Ortiz before moving in with his girlfriend. One day while doing yard work at his girlfriend's house, a man named Darryl drove up on a motorcycle and asked Estrada if he was interested in buying the vehicle. Estrada declined as he had no money.

One to two weeks later, Darryl came up in a van and offered to sell it to Estrada. Estrada and his girlfriend gave him about $50 for a down payment. Darryl took back the van after two days.

Darryl came by in a baby blue work truck several days later. He offered to sell the truck to Estrada, but Estrada declined as he had no money. Estrada told Darryl that defendant's brother would be interested, so he then took Darryl to see Ortiz, who lived nearby. Darryl and Ortiz talked; Estrada did not overhear the conversation but observed the two men exchanging keys. He saw Ortiz driving the blue truck about three months later.

Thileah Reynolds rented a bedroom to Ortiz and his girlfriend between July and October 2013. Ortiz first drove a small two-door car and then a black convertible. He started driving a blue pickup truck around August 1.

On September 5, 2013, defendant came to Reynolds's home and went upstairs to see his brother. Reynolds heard the truck drive off when defendant left.

3

DISCUSSION

I

*Prosecutorial Misconduct*

Defendant contends the prosecutor committed prejudicial misconduct by invoking peer pressure to persuade the jury to vote guilty, "essentially encouraging them to convict appellant in order to avoid social condemnation, rather than on the evidence presented."

During closing argument, defense counsel addressed the beyond a reasonable doubt standard and told the jury that "an abiding conviction is what we term a long-lasting belief," and that "you have to decide this case and have a long lasting belief that whatever verdict you're rendering is what you believe."

The prosecutor concluded her rebuttal as follows:

"Without rehashing all of the evidence, I will tell you that people in this courtroom, in Sacramento, all over California convict people on a beyond a reasonable doubt standard every single day. Despite what Defense is saying, it's not some insurmountable burden that can't be reached. It's not beyond all possible doubt or beyond all imaginary doubt. It's just,--it's when someone asks you about this case a week from now when the admonition is finally lifted and you can talk about it, if anyone is even interested in talking about it, and they will ask you what was this trial all about, and you tell them, well, we heard this evidence of this man, Ricardo Abel Ortiz, when he was 14, he stole a car. He messed with the steering column. He lied to the police officer. The police officer asked him whose car is it. He lied and he said it's my aunt's car. And the police officer asked him what's your aunt's name. He looked over and whispered to his friends, what's my aunt's name. He was found with two screwdrivers and a flashlight in the car back in 1995.

"Then they'll ask you what happened in this case. You'll say, well, it was similar in this case. He's in a car that has no AC, the locks aren't working, the ignition clearly

4

isn't working, and it's being started with [a pair of] scissors. Not only does he start the car with a pair of scissors, you'll tell your friend he also has a screwdriver in the car right next to the driver's seat. You'll--your friend will ask you, well, did anybody ask him if he's ever heard of cars that start with anything but keys, and you'll be able to tell them, you know what, he did, in fact, tell the officer that. He told the officer the only type of car I've ever heard of that starts with anything but a key is a stolen car.

"Your friend's going to ask you, you voted guilty, didn't you. And you're going to say, yes, I voted guilty because the case was proven beyond a reasonable doubt. That's the abiding conviction that we're talking about. And I'm asking you to vote guilty not because [of] what I'm saying. You have to do it because the evidence shows that the Defendant is guilty of driving that car. We know it was stolen. I'm asking you to do the right thing in this case and just hold him accountable for his actions on that day. Thank you."

Before excusing the jury for a break, the trial court gave the following admonition:

"I did want to make one point before we break on a closing. Your decision--and you will get this instruction. Your decision will be based solely upon the evidence that comes into this Court and the law that I give you. Counsel made an argument and an analogy about your friends and so forth, but please, everyone must understand peer pressure, or what somebody asks you, your response to what they might ask you in the future would not be a proper basis for your decision in the case. It must be based on the evidence that came in, the law that you're given regardless of what somebody may ask you in the future, okay."

"A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such ' "unfairness as to make the resulting conviction a denial of due process." ' [Citations.] Under state law, a prosecutor who uses deceptive or reprehensible methods commits misconduct even when those actions do not result in a

5

fundamentally unfair trial. [Citation.]" (*People v. Cook* (2006) 39 Cal.4th 566, 606.) " 'It is, of course, improper to make arguments to the jury that give it the impression that "emotion may reign over reason," and to present "irrelevant information or inflammatory rhetoric that diverts the jury's attention from its proper role, or invites an irrational, purely subjective response." [Citation.]' [Citation.]" (*People v. Redd* (2010) 48 Cal.4th 691, 742.)

However, "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety. [Citation.]" (*People v. Thornton* (2007) 41 Cal.4th 391, 454.) Nonetheless, "[a] defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.] In addition, failure to request the jury be admonished does not forfeit the issue for appeal if ' "an admonition would not have cured the harm caused by the misconduct." ' [Citations.]" (*People v. Hill* (1998) 17 Cal.4th 800, 820 (*Hill*).)

Defendant did not object to the argument in question or to the trial court's admonition, forfeiting his contention. Defendant's claim also fails on the merits. At worst, the prosecutor was improperly invoking peer pressure to support a guilty verdict. Any impropriety in the prosecutor's argument was cured by the trial court's immediate admonition, which correctly informed the jury that it must base its decision only on the evidence and the law, and what others might ask a juror in the future was not a proper basis for a verdict. "Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions. [Citation.]" (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Defendant's assertion regarding prosecutorial misconduct that " ' "[y]ou can't unring a bell" ' " (see *Hill, supra*, 17 Cal.4th at p. 845) is misplaced. The Supreme Court made this analogy in *Hill* due to the jury having heard "not just a bell, but a constant clang of erroneous law and fact." (*Ibid.*) This was not the

case here.  Since the admonition cured any harm caused by the argument, defendant's claim fails on the merits.

## II

*Proposition 47*

As pertinent to this case, Proposition 47 added section 490.2, which states in pertinent part:  "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor . . . ."  (§ 490.2, subd. (a).) Defendant asserts that Vehicle Code section 10851, unlawfully taking or driving a vehicle, is a theft offense subject to section 490.2.

Section 1170.18, subdivision (a) provides:  "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing . . . ."

The Attorney General argues that we are not permitted to grant defendant's requested relief because he must file a section 1170.18 petition for resentencing.

Proposition 47 was enacted on November 4, 2014, and went into effect on the following day.  (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089.)  Defendant's crime was committed before, but he was tried and sentenced after Proposition 47's effective date.  Since defendant was sentenced after Proposition 47 went into effect, the changes wrought by Proposition 47 applied at the time of sentencing.  (See *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168 [analogous provisions of Proposition 36 apply to a defendant whose crime is committed before but is sentenced after the

7

initiative's effective date]; Couzens & Bigelow, Proposition 47: "The Safe Neighborhoods and Schools Act" (May 2016) <http://www.courts.ca.gov/documents/Prop-47-Information.pdf> p. 9 (as of September 27, 2016.) We address defendant's contention on the merits.

Defendant did not raise section 490.2 at sentencing. At the sentencing hearing, defense counsel stated: "And I tried to look and see what the value of this car was, and I had some trouble finding it. The data base that I used is a Kelly Blue [B]ook website. They just don't have cars this old. So as I stated, I believe that there is some value to the car. I would guess that it's in the neighborhood of probably maybe $900 or so. I don't think that's a great monetary value."

There is no mention of the car's value in the record. Notwithstanding these procedural hurdles, we consider defendant's claim on the merits in order to avoid an unnecessary habeas petition for ineffective assistance of counsel or a section 1170.18 resentencing petition.

Whether Vehicle Code section 10851 is subject to section 490.2 is a matter currently before the California Supreme Court. (See, e.g., *People v. Ortiz* (2016) 243 Cal.App.4th 854, review granted Mar. 16, 2016, S232344; *People v. Haywood* (2015) 243 Cal.App.4th 515, review granted Mar. 9, 2016, S232250; and *People v. Page* (2015) 241 Cal.App.4th 714, review granted Jan. 27, 2016, S230793.) We find that the punishment for unlawfully driving or taking a vehicle was not changed by Proposition 47.

Defendant contends that Vehicle Code section 10851 defines a type of theft, and is therefore subject to section 490.2 for thefts of vehicles that do not exceed $950 in value. He claims this interpretation is consistent with the voters' intent in passing Proposition 47, and follows from a commonsense reading of the term "theft" as used in section 490.2. Defendant also notes that Proposition 47 itself refers to Vehicle Code section 10851 violations as "auto theft." Since unlawfully taking or driving a vehicle is a lesser included offense of grand theft auto, section 487, subdivision (d) (see *People v. Barrick*

8

(1982) 33 Cal.3d 115, 128), defendant claims that exempting Vehicle Code section 10851 from section 490.2 would create an anomalous result not intended by the voters. And, finally, he argues that equal protection requires thefts of vehicles worth $950 or less to be treated the same as other thefts of similar value.

The initiative reduced to misdemeanors three drug crimes, Health and Safety Code sections 11350, 11357, and 11377, as well as the property crimes of forging or writing bad checks (§§ 473, 476a) and receiving stolen property (§ 496). It also reduced to misdemeanors thefts and certain burglaries of commercial premises that did not exceed $950 through the newly enacted crimes of petty theft (§ 490.2) and shoplifting (§ 495.5), and limited felony punishment for petty theft with a prior (§ 666) for recidivists who would be disqualified from resentencing under the initiative. (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014) Official Title and Summary of Prop. 47, p. 34 (2014 Voter Guide); see also *id.*, text of Prop. 47, §§ 5-13, pp. 71-73.)

Vehicle Code section 10851 is notably absent from the criminal statutes changed by Proposition 47. As previously noted, the initiative allows for resentencing of those whose crimes would have been misdemeanors had Proposition 47 been in effect at the time of the offense. Since Proposition 47 did not amend Vehicle Code section 10851, defendant's crime would still be subject to felony or misdemeanor punishment had the initiative been in effect at the time of his crime. (See Veh. Code, § 10851, subd. (a).) Therefore, based on the statutory language alone, whether before or after Proposition 47, defendant could be convicted for a felony violation of Vehicle Code section 10851.

Defendant's claim instead centers on an interpretation of section 490.2, specifically the phrase, "[n]otwithstanding Section 487 or any other provision of law defining grand theft."

"In interpreting a voter initiative, we apply the same principles that govern our construction of a statute. [Citation.] We turn first to the statutory language, giving the words their ordinary meaning. [Citation.] If the statutory language is not ambiguous,

9

then the plain meaning of the language governs. [Citation.] If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the analyses and arguments contained in the official ballot pamphlet, and the ostensible objects to be achieved. [Citations.]" (*People v. Lopez* (2005) 34 Cal.4th 1002, 1006.)

The argument is unpersuasive because Vehicle Code section 10851 does not describe a form of grand theft. The crime of unlawfully driving or taking a vehicle " 'proscribes a wide range of conduct.' [Citation.] A person can violate [Vehicle Code] section 10851[, subdivision] (a) 'either by taking a vehicle with the intent to steal it or by driving it with the intent only to temporarily deprive its owner of possession (i.e., joyriding).' [Citations.]" (*People v. Garza* (2005) 35 Cal.4th 866, 876.) Since section 490.2 amends only section 487 and any other provision defining grand theft, it is simply inapplicable to Vehicle Code section 10851. For this same reason, it is therefore irrelevant that Vehicle Code section 10851 is a lesser included offense of grand theft auto. Since the crime of unlawfully taking or driving a vehicle proscribes theft and nontheft activity, it is not anomalous to preclude this crime from section 490.2.

The Legislature does not define grand theft by implication. Section 487 is not the only penal statute that specifically defines a form of grand theft. (See, e.g., §§ 487a, subd. (a) [any theft of a "horse, mare, gelding, any bovine animal, any caprine animal, mule, jack, jenny, sheep, lamb, hog, sow, boar, gilt, barrow, or pig" is grand theft], 487d ["Every person who feloniously steals, takes, and carries away, or attempts to take, steal, and carry from any mining claim, tunnel, sluice, undercurrent, riffle box, or sulfurate machine, another's gold dust, amalgam, or quicksilver is guilty of grand theft"].) Section 490.2 covers crimes such as these rather than offenses with nontheft components like unlawfully driving or taking a vehicle.

Defendant correctly points out that courts have referred to Vehicle Code section 10851 offenses as auto or vehicle thefts. (See, e.g., *In re D.B.* (2014) 58 Cal.4th 941, 945; *People v. Williams* (2008) 43 Cal.4th 584, 608; *People v. Johnson* (2004) 32 Cal.4th

260, 264.) He additionally notes references in the Penal Code to violations of Vehicle Code section 10851 as "auto theft" (see § 186.2, subd. (a)(32) ["Offenses involving the theft of a motor vehicle, as specified in Section 10851 of the Vehicle code"]) and "theft of a motor vehicle" (see § 666, subd. (a) ["auto theft under section 10851 of the Vehicle Code"]), and in Witkin (see 1 Witkin, Cal. Crim. Law 4th (2012) Elements § 36, p. 313 ["Veh.C. 10851 [vehicle theft]"]; 3 Witkin, *supra*, Punishment § 417, p. 645 ["statute applies to all felony convictions of vehicle theft under Veh.C. 10851, not merely those where defendant intended permanently to deprive owner of possession"].)

The correct term for the crime established in Vehicle Code section 10851, "unlawful driving or taking of a vehicle" (see, e.g., *People v. Navarro* (2007) 40 Cal.4th 668, 673, fn. 2; *People v. Garza, supra*, 35 Cal.4th at p. 871) is cumbersome compared to the more succinct "vehicle theft" or "auto theft." If the defendant's conduct in question clearly involved the theft of a vehicle rather than unlawful driving, then the shorter term may be more accurate as well. The use of shorthand references to Vehicle Code section 10851 does not alter the fundamental fact that one can violate this statute without committing a theft.

The statutes cited by defendant do not support defining Vehicle Code section 10851 as no more than a theft statute. Section 186.2 is part of the California Control of Profits of Organized Crime Act (§ 186 et. seq.), which provides for the forfeiture of profits obtained via organized crime (§ 186.1; *People v. Madeyski* (2001) 94 Cal.App.4th 659, 663). Section 186.2 states in pertinent part: "(a) 'Criminal profiteering activity' means any act committed or attempted or any threat made for financial gain or advantage, which act or threat may be charged as a crime under any of the following sections: [¶] . . . . [¶] (32) Offenses involving the theft of a motor vehicle, as specified in Section 10851 of the Vehicle Code." This simply limits the recovery of profits from organized crime involving Vehicle Code section 10851 violations to those stemming from vehicle thefts

11

rather than other activity such as unlawfully driving a vehicle.  It does not limit the type of criminal conduct covered by Vehicle Code section 10851.

Section 666, petty theft with a prior, states in pertinent part that "any person . . . who, having been convicted of petty theft, grand theft, a conviction pursuant to subdivision (d) or (e) of Section 368, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496, and having served a term of imprisonment therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, and who is subsequently convicted of petty theft, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison." (§ 666, subd. (a).)  The reference to Vehicle Code section 10851 was not changed by Proposition 47 when it amended that statute.  (2014 Voter Guide, *supra*, text of Prop. 47, § 10, p. 72.)  As with section 186.2, section 666 refers to violations of Vehicle Code section 10851 as auto thefts in order to limit application of section 666 to auto thefts rather than the unlawful taking of a vehicle.  This does not diminish the range of criminal activity covered by Vehicle Code section 10851.

Defendant relies on the broad purpose of the initiative, "to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and [to] support programs in K-12 schools, victim services, and mental health and drug treatment," (2014 Voter Guide, *supra*, text of Prop. 47, § 2, p. 70) in support of his position.

"But no legislation pursues its purposes at all costs.  Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice--and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law.  Where, as here, 'the language of a provision . . . is sufficiently clear in its context and not at odds with the legislative history, . . . "[there is no occasion] to examine

12

the additional considerations of 'policy' . . . that may have influenced the lawmakers in their formulation of the statute." ' [Citation.]" (*Rodriguez v. United States* (1987) 480 U.S. 522, 525-526 [94 L.Ed.2d 533, 538]; accord *County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, 48; italics omitted.) This is true even where legislation calls for liberal "construction." (See, e.g., *Foster v. Workers' Comp. Appeals Bd.* (2008) 161 Cal.App.4th 1505, 1510 [workers' compensation law].) The essence of lawmaking is the choice of deciding to what extent a particular objective outweighs any competing values, and a court in the guise of interpretation should not upset this balance where it is spelled out in the text of a statute. (*County of Sonoma*, at p. 48.)

The text of Proposition 47 does not support applying it to Vehicle Code section 10851 convictions. Likewise, by its terms, section 490.2 applies to section 487 and other statutes that explicitly define a form of grand theft. Since Vehicle Code section 10851, both by its text and as interpreted, does not define a grand theft offense, section 490.2 does not cover the crime. Therefore, the general purpose of Proposition 47 does not support defendant's argument in this context. (See *People v. Morales* (2016) 63 Cal.4th 399, 408 ["But the purpose of saving money does not mean we should interpret the statute in every way that might maximize any monetary savings"].)

We also reject defendant's equal protection argument. "[N]either the existence of two identical criminal statutes prescribing different levels of punishments, nor the exercise of a prosecutor's discretion in charging under one such statute and not the other, violates equal protection principles. [Citation.]" (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838.) It has therefore long been the case that "a car thief may not complain because he may have been subjected to imprisonment for more than 10 years for grand theft of an automobile [citations] when, under the same facts, he might have been subjected to no more than 5 years under the provisions of section 10851 of the Vehicle Code." (*People v. Romo* (1975) 14 Cal.3d 189, 197.) Unless the defendant can show that he or she " 'has been singled out deliberately for prosecution on the basis of some invidious criterion,' . . .

13

the defendant cannot make out an equal protection violation. [Citation.]" (*Wilkinson,* at p. 839.) Defendant has not made this showing, so his claim fails.

For the same reason, it is not an anomaly not intended by the voters to allow a person convicted of Vehicle Code section 10851 involving a vehicle worth $950 or less to receive a greater punishment under that provision than under section 487. The fact that different statutes punish the same conduct differently is not anomalous.

Since Proposition 47 did not change the range of punishment for Vehicle Code section violations, defendant is not entitled to resentencing.

DISPOSITION

The judgment is affirmed.


      HULL      , Acting P. J.


We concur:


     MAURO     , J.


     MURRAY    , J.

14