**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 5, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRITNEY JANE LITTLE DOVE
NIELSON,

      Petitioner-Appellee,

v.

SUNNY KETCHUM; JOSHUA
KETCHUM,

      Respondents-Appellants,

------------------------------

CHEROKEE NATION,

      Intervenor – Appellee.

Nos. 09-4113, 09-4129

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:08-CV-00490-TS)**

James B. Hanks of Hanks & Mortensen, P.C., Salt Lake City, Utah for Respondents-
Appellants.

Taralyn A. Jones (Calvin M. Hatch with her on the brief) of Tsosie & Hatch, LLC, West
Jordan, Utah for Petitioner-Appellee.

Chrissi R. Nimmo, Assistant Attorney General, Cherokee Nation, Tahlequah, Oklahoma
for Intervenor-Appellee.

Before **HARTZ, TACHA,** and **EBEL,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

This case concerns the application of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1963, which, among other things, imposes a period of ten days before a parent can consent to the termination of her parenting rights over an "Indian child." The day after giving birth to C.D.K., Petitioner-Appellee Britney Jane Little Dove Nielson appeared in state court in Utah to relinquish her parenting rights and consent to the adoption of her son by Respondents-Appellants Sunny and Joshua Ketchum. The court determined that although Nielson's mother was a registered member of the Cherokee Nation, Nielson was not, and consequently the court approved the adoption without applying the procedural safeguards of the ICWA.

Later, Nielson filed suit in federal district court, claiming that C.D.K. was an Indian child at the time of the adoption and hence the ICWA's ten-day waiting period should have applied. Even though she was not herself a member of the Cherokee Nation, Nielson pointed to a law passed by the Cherokee Nation establishing automatic temporary Cherokee citizenship for any newborn who is the direct descendant of a Cherokee listed on the Dawes Commission Rolls. The district court agreed that this act established tribal citizenship for C.D.K., and it invalidated Nielson's relinquishment of parental rights, leaving the matter of custody of C.D.K. for the Utah state courts. We

exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse on the grounds that C.D.K. was not a member of the Cherokee Nation for ICWA purposes at the time of the adoption.

## I. Background

On November 5, 2007, Nielson, who was seventeen at the time, gave birth to C.D.K. The very next day, Nielson, accompanied by her mother, appeared in state court in Utah and (a) relinquished her parenting rights and (b) consented to the adoption of the child by Joshua and Sunny Ketchum, in accordance with Utah law. See Utah Code Ann. § 78B-6-125(1) ("A birth mother may not consent to the adoption of her child or relinquish control or custody of her child until at least 24 hours after the birth of her child."). The Ketchums were also present and were represented by counsel; the court informed Nielson of her right to be represented by counsel, but Nielson stated that she did not wish to retain counsel.

At the hearing, Nielson's mother stated that she (C.D.K.'s grandmother) was enrolled in a tribe, but that she had never enrolled her children, including Nielson.[1] No one at the hearing specifically inquired as to whether the newborn was a member of an Indian tribe. Nielson testified that she had only an eighth-grade education and stated that although she was not currently on any medications because she had just given birth, she

---

[1] She did, however, state that they were considering enrolling Nielson in the next few months, and Nielson in fact became an enrolled member of the Cherokee Nation on August 5, 2008.

normally does take medication for depression and bipolar disorder. She also stated that she understood that by relinquishing her parenting rights, she would not be allowed to later change her mind, and she signed a consent and relinquishment form and agreed to the adoption of C.D.K. by the Ketchums. The state court judge accepted the relinquishment, awarded temporary custody to the Ketchums, and the adoption was finalized in May 2008.

On June 25, 2008, Nielson filed a petition in the U.S. District Court for the District of Utah asking that her voluntary termination of parental rights be invalidated pursuant to § 1914 of the ICWA. The ICWA "regulates proceedings for termination of parental rights, adoptions, and foster care placement involving Indian children." Felix Cohen, Handbook of Federal Indian Law § 11.01[1], at 820 (2005 ed.). The ICWA provides rights to the Indian child, the child's parents, and the child's tribe, and creates "a statutory scheme to prevent states from improperly removing Indian children from their parents, extended families, and tribes." Id. The "overriding purpose [of the ICWA] is to protect, preserve, and advance the integrity of Indian families" by providing for procedural and substantive safeguards that limit the ability of the state courts to remove an Indian child from her family. Id.

The Cherokee Nation subsequently intervened on Nielson's behalf. Both Nielson and the Cherokee Nation argued that C.D.K. was an "Indian child" within the meaning of the ICWA at the time of his adoption, pursuant to Chapter 2, Section 11A of the Cherokee Nation Citizenship Act ("Citizenship Act"). The Citizenship Act was adopted

4

"for the specific purpose of protecting the rights of the Cherokee Nation under the [ICWA]." (App. at 340.) Section 11A(B) provides as follows:

> Notwithstanding any provisions of this title to the contrary, <u>every newborn child who is a Direct Descendant of an Original Enrollee[2] shall be automatically admitted as a citizen of the Cherokee Nation for a period of 240 days following the birth of the child.</u> No request or application for Tribal Citizenship or other documentation need be submitted or delivered to the Registrar as a prerequisite to the temporary Tribal Citizenship of a child under this section. Such temporary Tribal Citizenship shall be effective automatically from and after the birth of the child for all purposes although the name of the child is not entered on the Cherokee Register.

(Id. (emphasis, footnote added).) The temporary citizenship automatically expires after 240 days unless the child applies for citizenship. (Id. § 11A(C).) Based on the Citizenship Act, Nielson claimed that C.D.K. was an Indian child at the time of his adoption and thus protected by the ICWA. Accordingly, she argues, because the ICWA procedural requirements were not followed when she consented to the termination of her parental rights—specifically, Nielson relinquished her parenting rights less than ten days after C.D.K.'s birth, see 25 U.S.C. § 1913(a)—the termination was invalid. See 25 U.S.C. § 1914 (permitting courts to invalidate a termination of parental rights when the procedural requirements of the ICWA are not complied with).

The district court agreed. On June 3, 2009, the district court concluded that C.D.K. was a direct descendant of an original enrollee of the Cherokee Nation, and thus,

---

[2] An "original enrollee" is someone who was listed on the Dawes Commission Rolls. (App. at 463.) The Dawes Commission was established in 1896 to, among other things, create membership rolls for the Cherokee Nation. See Vann v. Kempthorne, 534 F.3d 741, 744 (D.C. Cir. 2008) (citing Act of June 10, 1896, ch. 398, 29 Stat. 321, 339).

5

based on the Citizenship Act, an Indian child within the meaning of the ICWA. Accordingly, because the adoption process did not accord with the ICWA the court invalidated Nielson's termination of her parental rights over C.D.K., pursuant to 25 U.S.C. § 1914. The court thus granted Nielson partial summary judgment and denied the Ketchums' motion for summary judgment.

Less than two weeks later, on June 15, 2009, the court clarified that while it granted Nielson's motion for summary judgment pursuant to § 1914—thus invalidating the relinquishment of parental rights—it also denied Nielson's motion for summary judgment seeking vacature of the adoption proceedings under 25 U.S.C. § 1913(d) on the ground that Nielson's consent was obtained through fraud and duress. See 25 U.S.C. § 1913(d) ("Upon a finding that such consent [to the adoption] was obtained through fraud or duress, the court shall vacate [the adoption] decree and return the child to the parent."). Nielson has not appealed this determination.

Three days later, on June 18, 2009, the district court concluded that it lacked jurisdiction to order C.D.K.'s return to Nielson's custody. Because the court denied Nielson's motion for summary judgment under § 1913(d)—which would have required the court to order a return of the child if the adoption decree had been vacated due to fraud or duress—that section of the ICWA could not support jurisdiction to order C.D.K.'s return to Nielson's custody. The court stated, and the parties agreed, that the court could not order return of custody unless the petitioner complied with § 1916, which allows the federal district court to order return of the child only if the adoption decree is

6

vacated. Here, there was no vacature, and so the court had no statutory basis on which to order the return of the child. The court thus concluded that its involvement in the case was at an end—it had invalidated Nielson's relinquishment of her parental rights, and as the ICWA did not provide any basis on which the court could order the return of the child, it now fell to the state courts to determine the child's fate. The court also denied the Ketchums' motion to stay execution of the judgment pending appeal, and dismissed without prejudice the Ketchums' counterclaim for expenses incurred while raising C.D.K.

The Ketchums filed a notice of appeal (appeal no. 09-4113) regarding the court's June 3 order finding that C.D.K. is an Indian child and invalidating Nielson's relinquishment of her parental rights.[3] Nielson has not filed any cross-appeal.[4]

---

[3] The Ketchums also filed an appeal of the June 18 order (appeal no. 09-4127), but they have not raised any issues from that order and instead argue solely that the district court erred by invalidating Nielson's relinquishment of parental rights. Any issue related to the June 18 order is therefore waived. See Thomas v. Int'l Bus. Machs., 48 F.3d 478, 482 n.2 (10th Cir. 1995) (noting in parenthetical, that a "failure to argue an issue in the appellate brief or at oral argument constitutes waiver, even when the appellant lists the issue in the notice of appeal" (citation omitted)).

[4] She does argue, however, on pages 31-34 of her brief, that the district court erred and that "C.D.K. should have been returned to Nielson's custody." (Nielson Br. at 34.) Because she has not filed an appeal in this matter, that issue is not before this court. See Peterson v. Jensen, 371 F.3d 1199, 1201 n.2 (10th Cir. 2004) ("Because the [Appellees] did not file a cross-appeal on the additional issues decided by the District Court, we do not consider them here.").

In the meantime, Nielson filed a motion in state court seeking return of custody of C.D.K. The Utah state court determined that the statute of limitations barred the action and prevented the court from invalidating the adoption. Nielson appealed, and the Utah Court of Appeals certified the case for immediate transfer to the Utah Supreme Court, where the case is still pending.[5]

## II. Discussion

The Ketchums appeal the district court's partial grant of summary judgment in favor of Nielson. "We review summary judgment decisions de novo, applying the same legal standard as the district court." Willis v. Bender, 596 F.3d 1244, 1253 (10th Cir. 2010) (quotations omitted). Thus, we will affirm a grant of summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (amended Dec. 2010).

> 25 U.S.C. §1914 provides that
>
> [a]ny Indian child who is the subject of any action for . . . termination of parental rights under State law. . . and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

The parties do not dispute that Nielson relinquished her parental rights within ten days of C.D.K.'s birth, which, if he is an Indian child, violates § 1913. See 25 U.S.C. § 1913(a)

---

[5] On July 29, 2010, the Utah Supreme Court granted a motion to continue oral argument—so it appears that no decision in this case will be forthcoming soon.

("Any consent [to termination of parental rights] given prior to, or within ten days after, birth of the Indian child shall not be valid.").

This case thus turns on whether C.D.K. is an "Indian child" within the meaning of the ICWA—if he is, then the ICWA applies and Nielson's voluntary termination of parental rights must be invalidated, as the district court concluded; if he is not, then the ICWA does not apply and the district court's judgment must be reversed. For purposes of the ICWA, "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). Nielson and the Cherokee Nation have only ever argued that C.D.K. is an Indian child because he was a member of an Indian tribe at the time of the relinquishment hearing, so subparagraph (b) is not at issue.[6]

C.D.K. was thus an Indian child at the time of the relinquishment hearing if, and only if, he was a member of the Cherokee Nation at that time. Further, C.D.K. was a member of the Cherokee Nation at that time only if the Citizenship Act applied to C.D.K. at the time of the relinquishment hearing. As mentioned above, the Citizenship Act provides that "every newborn child who is a Direct Descendant of an Original Enrollee

---

[6] In any event, subparagraph (b) could not apply to bestow "Indian child" status to C.D.K. because it is undisputed that Nielson was not a member of an Indian tribe at the time of the adoption, and no information has been provided about C.D.K.'s father, so no evidence has been presented from which we could conclude that C.D.K. is "the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4)(b).

shall be automatically admitted as a citizen of the Cherokee Nation for a period of 240 days following the birth of the child." (App. at 340.) Accordingly, the Citizenship Act operated to make C.D.K. an Indian child subject to the protections of the ICWA at the time of the relinquishment hearing if (a) he is a direct descendant of an original enrollee, and (b) if the Citizenship Act can permissibly extend citizenship to C.D.K. in the ICWA context. We address these issues in turn.

### A.    Whether C.D.K. is a direct descendant of an original enrollee

In order for the Citizenship Act's automatic citizenship provision to apply, Nielson must prove that C.D.K. was "a Direct Descendant of an Original Enrollee." The district court admonished Appellees for not providing documentary evidence that clearly showed that C.D.K. had ancestors who were original enrollees. Nevertheless, the court found enough indirect evidence so as to conclude "that no reasonable factfinder could conclude that C.D.K. is anything other than a direct descendant of an original enrollee of the Cherokee Nation . . . ." (App. at 464.) The Ketchums argue that the district court did not draw every reasonable inference in their favor in reaching this conclusion, as the court is required to do in considering a summary judgment motion. See Harman v. Pollock, 586 F.3d 1254, 1268 (10th Cir. 2009), cert denied, 131 S.Ct. 73 (2010).

We agree with the district court that, although the evidence of C.D.K.'s ancestry was not clearly presented in the district court, the record nevertheless compels the conclusion that he is a direct descendant of an original enrollee. The current constitution of the Cherokee Nation, adopted in 2003, provides that "[a]ll citizens of the Cherokee

10

Nation must be original enrollees or descendants of original enrollees listed on the Dawes Commission Rolls." (App. at 292.) The prior constitution, enacted in 1976, also called for reference to the Dawes Commission Rolls to prove membership in the Cherokee Nation.[7] (App. at 217 ("All members of the Cherokee Nation must be citizens as proven by reference to the Dawes Commission Rolls . . . .").)

The record contains approved applications for citizenship in the Cherokee Nation for both Nielson and her mother, filed in May 2008.[8] Under the terms of the 2003 Constitution, in order for those applications to be approved, Nielson and her mother "<u>must</u> be original enrollees or descendants of original enrollees." (App. at 292 (emphasis added).) The Registration Committee approved their applications,[9] and so the record permits only the conclusion that Nielson and her mother must be descendants of original enrollees. This conclusion is corroborated by a Certificate of Degree of Indian Blood issued to Nielson by the United States Department of the Interior, which lists Dawes Roll Numbers for Nielson's great-great grandparents. The record also contains a Certificate of

---

[7] The 1976 constitution is printed verbatim in a document comparing the 1976 and 2003 constitutions, which was provided to the voters who adopted the 2003 constitution and which is in the record.

[8] It is unclear whether Nielson's mother was a registered member of the tribe prior to filing this application, as she claimed at the relinquishment hearing.

[9] According to the Cherokee Constitution, a Registration Committee considers the eligibility of applicants to see if they qualify for Cherokee citizenship. The decisions of the Committee are reviewable by tribal courts.

11

Degree of Indian Blood issued to Nielson's grandfather which also shows the Dawes Roll Numbers for these ancestors.

The record thus demonstrates that Nielson—as well as her mother—is a direct descendant of Dawes enrollees. C.D.K., who is a descendant of Nielson, must therefore be a descendant of Dawes enrollees as well.

**B.      Applicability of the Citizenship Act to Declare Cherokee Citizenship on C.D.K.**

According to the Citizenship Act, C.D.K. was a citizen of the Cherokee Nation at the time of his adoption and thus an "Indian child" subject to the protections of the ICWA. See 25 U.S.C. § 1903(4) ("'Indian child' means any unmarried person who is under age eighteen and is . . . a member of an Indian tribe . . . ."). The Ketchums challenge whether the Citizenship Act can apply at all in this situation, arguing that it could not grant C.D.K. citizenship for ICWA purposes. We agree.

Assuming, without deciding, that the tribe possessed the authority to declare that the offspring of a nonmember is a citizen without the nonmember's consent for internal tribe purposes, the type of citizenship provided by the Citizenship Act does not make the child a "member" within the meaning of the ICWA. The ICWA explicitly defines "Indian child" as "any unmarried person who is under age eighteen and is . . . a member of an Indian tribe." 25 U.S.C. § 1903(4) (emphasis added). While the Citizenship Act purports to make newborns who are directly descended from Dawes enrollees temporary citizens for 240 days following their birth, the ICWA does not apply to this sort of

12

temporary membership. Appellees have not identified any other law by any other tribe that provides for temporary membership, let alone that such a temporary membership was within the contemplation of Congress when it applied the ICWA to children who are "member[s]" of Indian tribes. We find that Congress did not intend the ICWA to authorize this sort of gamesmanship on the part of a tribe—e.g. to authorize a temporary and nonjurisdictional citizenship upon a nonconsenting person in order to invoke ICWA protections. Therefore, we conclude that § 1903(4)(a)'s definition of an Indian child as including a "member of an Indian tribe" does not include the type of temporary membership provided in the Citizenship Act.

Not only does the temporary membership provision of the Citizenship Act fail to bring temporary members under the protection of the ICWA, but the Citizenship Act's broad definition of citizenship—even if it was full citizenship as opposed to temporary—violates Congress' intent. The legislative history of the ICWA shows that Congress considered, but ultimately rejected, an expansive definition of "Indian child" that was comparable to the definition employed in the Citizenship Act and that would have included C.D.K. within its terms. Specifically, an earlier draft of the ICWA did not define "Indian child," but rather defined "Indian" as "any person who is a member of <u>or who is eligible for membership in a federally recognized Indian tribe.</u>" (App. at 414 (123 Cong. Rec. S37223 (1977) (emphasis added).) Under this rejected definition, C.D.K. would have been an Indian child even without the Citizenship Act because he was eligible for membership in a federally recognized tribe. But the final draft of the statute

limited membership for those children who were <u>eligible</u> for membership because they had a parent who is a member.

Appellees contend that this court cannot interfere with the tribe's determination of who is a member because "tribes . . . have exclusive authority on membership determinations for tribal purposes." <u>Ordinance 59 Ass'n v. U.S. Dep't of Interior Sec'y</u>, 163 F.3d 1150, 1153 n.3 (10th Cir. 1998); <u>see also</u> <u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 72 n.32 (1978) ("A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community."). In this context, however, the Cherokee Nation does not seek to define membership only for <u>tribal</u> purposes, but also seeks to define membership for the purposes of a federal statute.

We are interpreting the ICWA, a federal statute, and conclude only that the Citizenship Act does not bring C.D.K. within the definition of "Indian child" under the ICWA. The tribe cannot expand the reach of a federal statute by a tribal provision that extends automatic citizenship to the child of a nonmember of the tribe.

Based on the definition of "Indian child" provided in the ICWA, we conclude that C.D.K. was not an "Indian child" at the time of the adoption proceedings for ICWA purposes, and so the procedural safeguards provided for in the ICWA did not apply to the relinquishment hearing and adoption proceedings. The district court's conclusion that those proceedings had to comply with the ICWA was in error.

14

**III.    Conclusion**

We REVERSE the district court's grant of partial summary judgment in favor of Nielson, and REMAND for proceedings consistent with this opinion.