OSCN Found Document:IN THE MATTER OF M.H.C.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN THE MATTER OF M.H.C.
2016 OK 88
Case Number: 114552
Decided: 09/13/2016
As Corrected: September 16, 2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 88, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



IN THE MATTER OF M.H.C., Alleged Deprived Child, STATE OF OKLAHOMA, Petitioner/Appellant,
v.
DAWN REICH-CRABTREE (Natural Mother) and TRAVIS CRABTREE (Natural Father), Respondents/Appellees,
and
BRANDI HORN (Foster Mother), Appellant,
and
M.H.C. (Minor Child), Appellee,
and
CHEROKEE NATION, Intervenor/Appellee.)

ON APPEAL FROM THE DISTRICT COURT OF ROGERS COUNTY,
THE HONORABLE DAVID SMITH, PRESIDING.

¶0 Cherokee Nation filed a motion to transfer the deprived case of M.H.C. to tribal court upon natural mother's tribal enrollment. State of Oklahoma and foster mother objected. The district court granted the motion to transfer, finding State and foster mother failed to present clear-and-convincing evidence to overcome the presumption in favor of tribal court jurisdiction in cases concerning the Indian Child Welfare Act. 25 U.S.C. §§ 1901-1963 (1978). This Court retained the appeal for disposition.

AFFIRMED.

Zach Cabell, Assistant District Attorney Rogers County, Claremore, Oklahoma, for Appellant State of Oklahoma.
Becki A. Murphy and Megan M. Decker, Murphy Francy, PLLC, Tulsa, Oklahoma, for Appellant Brandi Horn.
Chrissi R. Nimmo, Assistant Attorney General, Cherokee Nation, Tahlequah, Oklahoma for Intervenor/Appellee Cherokee Nation.
Allison Wade, Wade Law Firm, Tulsa, Oklahoma, for Appellee Dawn Reich-Crabtree.
Kimberly Appleman, Rogers County Public Defender, Catoosa, OK, for Appellee M.H.C.


Taylor, J. 
¶1 Section 1911(b) of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1968 (1978), controls a motion to transfer a child-custody proceeding from state court to tribal court where the child is an Indian child under the statutory definition. The questions presented to this Court are whether the district court erred when it (1) found ICWA applicable to a case where the child was not an Indian child when the case was filed and (2) found lack of good cause to keep the case in state court. As an aside, before this Court is also the question whether a finding of ICWA's applicability must be applied retroactively to all prior proceedings in the case. We answer each question in the negative.
I. FACTS AND PROCEEDINGS
¶2 M.H.C. (the child) was born in September of 2013. The Oklahoma Department of Human Services (DHS) placed the child in protective custody on November 5, 2013. In the initial petition filed on November 18, 2013, the State of Oklahoma[1] (the State) declared ICWA's provisions applicable. On November 21, 2013, the Cherokee Nation appeared at the initial appearance, and the natural mother informed the court that she had a Certificate of Degree of Indian Blood but was not currently a tribal member.
¶3 Thereafter, the Cherokee Nation received official notice from the State that it planned to adjudicate the child as deprived. The Cherokee Nation sent DHS a response notifying DHS that the child was eligible for enrollment in the tribe and enclosing a tribal-enrollment application for DHS to complete. The Cherokee Nation testified it could not complete the application without access to the child's case file and birth certificate. After the Cherokee Nation's initial attempt to have DHS complete the enrollment application, the Cherokee Nation sent DHS three additional enrollment applications. DHS employee Ms. Choate testified to seeing at least one application and acknowledged that a DHS employee can fill out a child's enrollment application without natural mother's assistance. Ms. Choate testified she had previously filled out a child's application to help the child gain tribal membership.
¶4 On December 3, 2013, the district court ruled ICWA inapplicable. At the first family team meeting, the Cherokee Nation, the natural mother, and DHS were present. The natural mother was informed if she gained membership in the Cherokee Nation, ICWA would apply. The natural mother was also told if ICWA applied, the child would likely have to leave foster mother's care because foster mother was a non-ICWA compliant placement. No party informed the natural mother of ICWA's benefits and protections.[2] The natural mother declined to enroll at the time. The district court subsequently found the State broke confidentiality by allowing the Cherokee Nation to attend a family team meeting in a non-ICWA case.
¶5 In September 2014, the State filed a motion to terminate the natural mother's rights due to her absence in the pending court proceedings. The State served the natural mother by publication. On December 18, 2014, the court entered a Default Order of Termination of Parental Rights against the natural mother for failure to appear and defend her rights to her child. On February 5, 2015, the natural mother became an enrolled citizen of the Cherokee Nation. On February 19, 2015, the Cherokee Nation filed a motion to intervene and, on March 24, 2015, filed a motion to transfer to tribal court. In the spring of 2015, the district court vacated the order terminating the natural mother's rights due to statutorily defective service. On June 9, 2015, the district court found natural mother's rights were still intact and the permanency plan should be reunification.
¶6 On November 20, 2015, the district court granted the Cherokee Nation's motion to transfer the case to tribal court, finding the State failed to provide clear-and-convincing evidence of good cause to deny the transfer. The State and foster mother (together Appellants) appealed. This Court retained the appeal for disposition. Neither DHS, nor the natural mother, nor the child through her attorney objects to the transfer to tribal court jurisdiction. Only the State and the foster mother object.
II. STANDARD OF REVIEW AND BURDEN OF PROOF
¶7 ICWA's applicability is a question of law. The standard of review for questions of law is de novo. Kluver v. Weatherford Hosp. Auth., 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. When ruling on a motion to transfer jurisdiction to tribal court, the party opposing transfer has to prove good cause to keep the case in state court by clear-and-convincing evidence. See In re M.S., 2010 OK 46, ¶ 19, 237 P.3d 161, 167. This Court has yet to establish the deference it will give to the district judge's decision to grant a motion to transfer under ICWA or the Oklahoma Indian Child Welfare Act (OICWA). See id. We need not do so here because even under the least discretionary standard, the evidence supports the district court's decision.
III. 25 U.S.C. § 1911(b)'s APPLICATION
¶8 In 1978, the United States Congress passed ICWA in response to the alarming rate at which states were taking away tribal children from parents and tribes in child-custody proceedings. See 25 U.S.C. at § 1901(4). Congress' stated policy for enacting ICWA was to establish minimum federal standards "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families" during state child-custody proceedings. Id. § 1902.
¶9 The only provision of ICWA at issue here is Section 1911(b). Section 1911(b) provides:


In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe . . . .
Section 1911(b) of ICWA applies in (1) proceedings for foster care placement and termination of parental rights (2) involving an Indian child. Id. § 1903(1) & (4)(b); see Adoptive Couple v. Baby Girl, 133 S.Ct. 2552, 2557 n.1 (2013). ICWA defines an Indian child as "any unmarried person who is under eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). No one contests that this is a proceeding that falls under Section 1911(b). Appellees urge that the Child meets the definition of Indian child and ICWA applies, while Appellants urge that Section 1911(b) and ICWA are inapplicable based on their perceived justifications.
¶10 First, Appellants argue Congress' intent when passing ICWA was to limit ICWA's reach. Pointing the Court to Neilson v. Ketchum, 640 F.3d 1117, 1124 (10th Cir. 2011), Appellant's position is that congressional intent to limit ICWA's reach is found in its rejection of a proposed definition of "Indian" to include all persons eligible for membership in an Indian tribe within ICWA's purview whether or not a parent was a tribal member. However, their argument fails to recognize that the current definition, as passed by Congress, includes the child as well. The child is an unmarried minor, and upon the natural mother's membership in the Cherokee Nation, the child became "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. §§ 1903(1) & 1903(4)(b); Baby Girl, 133 S.Ct. at 2557 n.1.
¶11 Next, Appellants urge that OICWA, 10 O.S.2011 §§ 40-40.9, limits ICWA's application to children who are Indian children prior to the proceedings' initiation. OICWA applies ICWA "to all state voluntary and involuntary child custody court proceedings involving Indian children, regardless of whether or not the children involved are in the physical or legal custody of an Indian parent or Indian custodian at the time state proceedings are initiated." Id. § 40.3 (emphasis added). Appellants argue that because the statute only mentions application at the time the proceedings initiate, OICWA impliedly limits application to children who fall within ICWA's definition of Indian child when taken into protective custody.
¶12 This Court settled this issue in In re Baby Boy L., 2004 OK 93, ¶ 18, 103 P.3d 1099, 1105-06. This Court found that, under the 1994 amendment to Section 40.3,


[OICWA] controls regardless of whether the child or children involved in the proceeding are in the physical or legal custody of an Indian parent or Indian custodian when the state proceedings are initiated.
Id. Rather than restricting the definition of Indian child only to those children that meet the definition at the proceeding's initiation, as the State could not do, see id. ¶ 12, 103 P.3d at 1104, OICWA expands the reach in Oklahoma of ICWA's protections by eliminating the need for an existing Indian custodian at the time the state proceedings are initiated. See id.
¶13 Similarly, Appellants argue ICWA's plain language prohibits applying ICWA to a case where the child is not in a parent's custody at the time the child comes within ICWA's definition of Indian child. Appellants rely on the language of Section 1912(e) and (f). These provisions require an initial determination that the "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" before a court can order a foster care placement or the termination of parental rights. 25 U.S.C. § 1912(e) & (f). These provisions grant extra protections before parental rights are impacted and do not address the issue before this Court as to whether the district court erred in transferring the proceeding to tribal court. Neither does their language impose a restriction on ICWA's definition of Indian child to require parental custody at the time a child classifies as an Indian child. We reject Appellants' contention.
¶14 Appellants next argument is at best confusing. Their initial premise is that the child was not removed from an Indian family because the mother was not enrolled at the time the State removed the child. Appellants assert that pursuant to Section 1902's policy statement, ICWA applies only to "intact Indian families," and no Indian family existed at the time of the child's removal.
¶15 We agree that Congress was concerned by the familial impact of wholesale removal of Indian children from their homes. But of equal concern was the impact on tribes' stability and security. 25 U.S.C. § 1902; Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 49 (1989) ("[F]or Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves . . . ."). Tribal interest and protection are "at the core of the ICWA, which recognizes that the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents." Holyfield at 52. Two primary concerns in establishing ICWA were that the removal of Indian children from their tribes (1) is detrimental to the long-term survival of tribes, and (2) has "damaging social and psychological impact[s]" on the children. Id. at 50. Appellants have pointed only to the heightened protections before removal of children from parental custody and ignore other protections such as the right to transfer a proceeding to tribal court whether or not parents ever had custody. Baby Girl, 133 S.Ct. at 2561 n. 6 (agreeing with Justice Sotomayor's dissent); see id. at 2574 (Sotomayor, J., dissenting).
¶16 ICWA applies prospectively to a proceeding when the record establishes the child meets ICWA's definition of an Indian child. Appellants argue the district court erred in finding ICWA applicable at a stage in the proceeding later than the proceeding's commencement. Appellants then argue that making such a finding will force retroactive application of ICWA. We disagree.
¶17 We agree with the Supreme Court of Nebraska, "the provisions of ICWA . . . apply prospectively from the date Indian child status is established on the record." In re Adoption of Kenton H., 725 N.W.2d 548, 555 (Neb. 2007). In support of their argument, Appellants rely on Baby Girl and Neilson; however, we find our ruling consistent with these cases as neither case applied ICWA retrospectively from the date the record established it was applicable. Baby Girl, 133 S.Ct. at 2565; Neilson 640 F.3d at 1122. Both Baby Girl and Neilson can be construed either as applying ICWA prospectively from the date the record showed it applied or as a waiver of a parent's right to assert ICWA's protections. Upon the date the record shows that ICWA is applicable, the proceedings must be ICWA compliant. In the present case, ICWA became applicable on February 5, 2015, when the natural mother gained membership in the Cherokee Nation, making the child an Indian child under ICWA. Retroactive application of ICWA is not applicable here to invalidate the district court's prior orders.
¶18 Next, Appellants rely on Baby Girl to argue ICWA can only apply to "intact Indian families." 133 S.Ct. at 2562-2563. In Baby Girl, the natural father attempted to withdraw his relinquishment of parental rights and consent to an adoption, claiming the termination of his parental rights and the adoption did not comply with ICWA. Id. at 2559. The Supreme Court found ICWA's termination statute, Section 1912(f), provided heightened protection for "intact Indian families." Id. at 2562-63. Here, the Cherokee Nation is seeking to transfer the proceeding to tribal court. Unlike Baby Girl, the natural mother sought to neither withdraw a relinquishment of her parental rights nor withdraw a consent to an adoption. The language in Section 1912(f) utilized by the Supreme Court of an "intact Indian family" is not found in Section 1911(b) addressing transfers to tribal courts. Appellants' reliance on Baby Girl is misplaced; Baby Girl is factually distinguishable and addressed Section 1912(f) of ICWA, not Section 1911(b), making the U.S. Supreme Court's holding on which Appellants rely irrelevant here.
¶19 Finally, Appellants rely on the United States Court of Appeals for the Tenth Circuit's holding in Neilson v. Ketchum, 640 F.3d 1117, 1124 (10th Cir. 2011), to argue against ICWA applicability. In Neilson, the natural mother attempted to invalidate the termination of her parental rights at the proceeding's adoption stage by urging ICWA applicable after she had relinquished parental rights and consented to the baby's adoption. Id. at 1119. As in Baby Girl, the court was addressing the termination of parental rights, not the transfer of the proceedings to tribal court. For the same reasons that Appellants' reliance on Baby Girl is misplaced, their reliance on Neilson is also misplaced.
¶20 The provisions of ICWA become effective in a state child custody proceeding on the date that the record supports a finding that ICWA applies. Section 1911(b) became applicable, with prospective application, when the child met the definition of an Indian child under ICWA. Appellants have failed to provide any authority which would require a different finding. The district court did not err in finding that it should consider whether good cause existed to deny the motion to transfer to tribal court.
IV. 25 U.S.C. § 1911(b) MOTION TO TRANSFER
¶21 In a state court proceeding for foster care placement or termination of parental rights, ICWA directs a state court to transfer jurisdiction to tribal court. 25 U.S.C. § 1911(b). Section 1911(b) provides that the court, "in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe." Id. Good cause is an exception to a transfer to tribal court. ICWA does not define "good cause," and the Supreme Court has not articulated a definition. Appellants argue that if Section 1911(b) is applicable to these proceedings, the district court nonetheless erred in granting the motion to transfer to tribal court. It is undisputed that the State bore the burden of establishing good cause by clear-and-convincing evidence. See In re M.S., 2010 OK 46, ¶ 19, 237 P.3d 161, 167. The district court found the State did not meet their burden and granted the transfer to tribal court.
¶22 The Bureau of Indian Affairs (BIA) published the Guidelines for State Courts and Agencies in Indian Child Custody Proceedings in 1979 for state courts to use in proceedings when ICWA applies. 44 Fed. Reg. 67,584 (Nov. 28, 1979). The 1979 BIA Guidelines provided a non-exclusive list of what did not amount to good cause.


(a) Good cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by the Act to which the case can be transferred.
(b) Good cause not to transfer the proceeding may exist if any of the following circumstances exists:


(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.
(ii) The Indian child is over twelve years of age and objects to the transfer.
(iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.
(iv) The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.
(c) Socio-economic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems may not be considered in a determination that good cause exists.
(d) The burden of establishing good cause to the contrary shall be on the party opposing the transfer.
¶23 While recognizing the non-exclusive list of what is not "good cause" under the 1979 BIA Guidelines in In re M.S., this Court analyzed the only three factors recognized as relevant by the In re M.S. district court. 2010 OK 46, ¶ 20, 237 P.3d at 168. These were (a) the length of time between the state court's initial exercise of jurisdiction and the filing of the motion to transfer, (b) the relationships between the children and their foster parents, their attorney, DHS social workers, and medical providers, and (c) the location of the most relevant evidence. Id. After analyzing these factors, this Court found that the district court had erred in finding good cause not to transfer the case from the Oklahoma state court to the tribal court in the State of Washington. Id. ¶ 42, 237 P.3d at 172.
¶24 Effective December 12, 2016, the BIA amended the 1979 BIA Guidelines by enacting regulations that rewrote what the 1979 BIA Guidelines defined as "good cause" and that were more closely aligned with ICWA. Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146 (Feb. 25, 2015) (to be codified at 25 C.F.R. 23.117 to 23.118). Subsection C.2 of the 2016 BIA Guidelines provides the new criteria:


Upon receipt of a transfer petition from an Indian child's parent, Indian custodian, or Tribe, the State court must transfer the child-custody proceeding unless the court determines that transfer is not appropriate because one or more of the following criteria are met:
(a) Either parent objects to such transfer;
(b) The Tribal court declines the transfer; or
(c) Good cause exists for denying the transfer.
Id. at 10,156.
¶25 The 2016 BIA Guidelines provides how good cause should be determined:


(c) In determining whether good cause exists, the court may not consider whether the case is at an advanced stage or whether transfer would result in a change in the placement of the child because the Act created concurrent, but presumptively, tribal jurisdiction over proceedings involving children not residing or domiciled on the reservation, and seeks to protect, not only the rights of the Indian child as an Indian, but the rights of Indian communities and tribes in retaining Indian children. Thus, whenever a parent or tribe seeks to transfer the case it is presumptively in the best interest of the Indian child, consistent with the Act, to transfer the case to the jurisdiction of the Indian tribe.
(d) In addition, in determining whether there is good cause to deny the transfer, the court may not consider:


(1) The Indian child's contacts with the tribe or reservation;
(2) Socio-economic conditions or any perceived inadequacy of tribal or Bureau of Indian Affairs social services or judicial systems; or
(3) The tribal court's prospective placement for the Indian child.
Id. The 2016 BIA Guidelines, like the 1979 BIA Guidelines, do not list the factors to be considered when determining what constitutes "good cause" to deny a transfer to tribal court, giving the district court wide discretion in determining relevant factors. Rather the 2016 Guidelines give specific criteria which may not be considered.
¶26 Here, the parties presented evidence only of the three factors analyzed by In re M.S. in support of their arguments: timeliness, best interest of the child, and location of the proceedings. Appellants did not present evidence of any other factors for the district court's consideration. Therefore, we need only address the three In re M.S. factors put forth by the Appellants and not apply the 2016 BIA Guidelines or define "good cause." We have rejected Appellants' timeliness argument when addressing ICWA's applicability. We examine Appellants' other two In re M.S. factors in turn.
¶27 Appellants claim the best interests of the child support denial of the transfer to tribal court. The record does not support their argument. The goal of the district court's permanency plan was reunification with the natural mother. Appellants failed to present any evidence which would show that transfer to tribal court would not promote this goal. Although Appellants introduced evidence of a bond with a half-sibling in the foster mother's care, they introduced no evidence of a bond with the foster mother and failed to present any evidence of physical or emotional harm to the child if the proceedings were transferred to tribal court. Appellants' evidence was that the child would suffer from a change in foster-care placement-an issue not before the district court or this Court. ICWA's placement preference are applicable to district court proceeding. And lastly, the best interests of the child can just as easily be determined by the tribal court. One argument Appellants strongly imply is that a tribal court could not make this determination. Appellants have not supported this implication, and we refuse to make such a finding.
¶28 The final In re M.S. factor put forth by Appellants is the change in location of the proceedings--from Rogers County District Court to the Cherokee Nation tribal court. The natural mother resides in Tulsa County, and the foster mother resides in Creek County. In light of In re M.S., wherein this Court upheld a motion to transfer to a tribal court in the State of Washington from Oklahoma, 2010 OK 46, ¶ 42, 237 P.3d at 172, a change in location from Rogers County District Court to the Cherokee Nation tribal court is insignificant. Although the Cherokee Nation submitted the 2016 BIA Guidelines as supplemental authority, we need not address the change the 2016 BIA Guidelines have upon the In re M.S. factors. Because even if the In re M.S. factors relied on by Appellants are applicable in this proceeding, they have not established the current In re M.S. factors by clear-and-convincing evidence. We find that the district court did not err in granting the motion to transfer the proceedings to the Cherokee Nation tribal court.
V. CONCLUSION
¶29 The district court did not err in finding ICWA applicable upon the natural mother's enrollment in the Cherokee Nation. ICWA applies to the proceedings prospectively from the date the record supports its application. Appellants have failed to present clear-and-convincing evidence of "good cause" for the case to remain in the Rogers County District Court. Appellants' unlearned understanding of what is binding case law and attempts to broaden holdings of this Court, the United States Supreme Court, and the Tenth Circuit Court of Appeals, and ICWA's provisions dealing with termination of parental rights will not support a reversal of the district court's order. Because the district court did not err in granting the motion to transfer to tribal court, we affirm the order granting the motion to transfer.

DISTRICT COURT'S ORDER GRANTING MOTION TO TRANSFER AFFIRMED.

ALL JUSTICES CONCUR.

FOOTNOTES

[1] Throughout the proceedings the State was represented by the Rogers County District Attorney.

[2] The Cherokee Nation argues that no one--not DHS, the court, the state through the assistant district attorney, or the mother's attorney--informed the natural mother of ICWA's protective provisions. However, the transcript shows a Cherokee Nation representative was also present at the family team meeting where ICWA was discussed with the natural mother. The tribe had equal opportunity to inform natural mother of ICWA's protective provisions, yet did not do so.




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed
 2004 OK 93, 103 P.3d 1099, IN THE MATTER OF BABY BOY L.
Discussed
 2010 OK 46, 237 P.3d 161, IN THE MATTER OF: M.S.
Discussed at Length