OSCN Found Document:IN THE GUARDIANSHIP OF C.H.S.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN THE GUARDIANSHIP OF C.H.S.
2016 OK CIV APP 72
Case Number: 114354
Decided: 10/31/2016
Mandate Issued: 11/22/2016
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2016 OK CIV APP 72, __ P.3d __

 



IN THE GUARDIANSHIP OF: C.H.S. and K.W.S.,


CHEROKEE NATION, Petitioner/Appellant,
v.
TED STRAWN, SCARLETT STRAWN, and ERICA STRAWN, Respondents/Appellees. )





APPEAL FROM THE DISTRICT COURT OF
OKFUSKEE COUNTY, OKLAHOMA


HONORABLE LAWRENCE W. PARISH, TRIAL JUDGE





REVERSED AND REMANDED WITH DIRECTIONS





Chrissi R. Nimmo, Tahlequah, Oklahoma, for Petitioner/Appellant
Luke Gaither, GAITHER LAW OFFICE, Henryetta, Oklahoma, for Respondents/Appellees







JANE P. WISEMAN, PRESIDING JUDGE:



¶1 Cherokee Nation appeals a trial court order denying its motion to transfer this case to the Cherokee Nation District Court. We are asked to address whether it was error for the trial court to conclude there was good cause to deny the transfer. We conclude the Guardians did not provide clear and convincing evidence of good cause for the trial court to decline Cherokee Nation's request to transfer jurisdiction to tribal court. We reverse the decision of the trial court and remand with directions to transfer the case as requested by Cherokee Nation.


FACTS AND PROCEDURAL BACKGROUND


¶2 Tedd Strawn and Scarlett Strawn (Guardians) applied for and were granted an ex parte emergency order of temporary custody and guardianship in June 2010 for CHS and KWS. The trial court issued letters of guardianship to Guardians on July 14, 2010. The order appointing the Strawns as Guardians of the minor children provides "that the minor children are Indian Children within the meaning of the Federal and State Indian Child Welfare Acts, and that proper notice on the tribe has been given according to the law." In September 2011, the children's mother, Erica Strawn, filed a motion to terminate the guardianship and restore custody to her or, in the alternative, a motion for a reunification plan.


¶3 The trial court appointed a guardian ad litem (GAL) for CHS and KWS in October 2011. On October 26, 2011, Guardians filed an objection to Mother's motion to terminate/motion for a reunification plan in which they stated the children have lived with them since before the guardianship order in 2010. They further contended Mother is unfit to have custody of CHS and KWS because (1) she "was incarcerated for nearly fourteen (14) months after she took the children's father's life in a willful and wanton act," and (2) before the children's removal from the home, "there were serious deficiencies in care for the children due to neglect of the children's medical and dental needs, and also due to a failure by the Petitioner to obtain proper services for the children's speech deficiencies."


¶4 In an order filed April 15, 2014, the trial court found that the guardianship should remain in place and ordered supervised visitation for Mother on alternating weekends for two hours, either on Saturday or Sunday, to take place at the Hope House in Shawnee. The court ordered the attorneys to provide a case report to DVIS in Tulsa within three weeks and Mother to set up an assessment with DVIS. The court stated Mother is allowed and encouraged to attend the children's extracurricular activities, but the parties are to avoid contact with each other. The court further provided that the matter was subject to review on application by either party.


¶5 On June 26, 2014, Cherokee Nation filed a notice of intervention pursuant to 25 U.S.C.A. § 1911(d). On March 9, 2015, Cherokee Nation filed a petition to transfer the case to the Cherokee Nation District Court pursuant to 25 U.S.C.A. § 1911(b). Guardians filed an objection.


¶6 In its response to the objection, Cherokee Nation asserted, "Neither the length of the proceeding [nor] the length of placement are good cause to deny transfer." It further asserted that it did not receive notice when the guardianship proceeding was initiated as required by federal and state law. It argued that Mother's alleged lack of effort to correct the conditions that led to the guardianship was not a sufficient reason to deny the transfer. According to Cherokee Nation's response, the only condition mentioned in the guardianship referred to the fact that Mother was in jail on allegations of murdering the children's father and "Mother corrected the condition of being incarcerated when she was freed after being found not guilty on all charges by a jury of her peers on August 19, 2011." It further stated there were no active efforts to reunify the family as required by the Indian Child Welfare Act (ICWA), Cherokee Nation is the best forum to determine the best interests of the children, and Guardians' forum non conveniens arguments do not constitute good cause to deny the transfer.


¶7 At the hearing held on April 22, 2015, no evidence or testimony was presented. After argument, the trial court stated that it was denying the motion to transfer. In its order filed on September 15, 2015, memorializing that ruling, the trial court found there was good cause to deny the transfer to Cherokee Nation Tribal Court. The court found the record in the case "includes multiple Orders that would allow for reunification between the natural mother and minor children if natural mother met the requirements." The court further found that neither the children nor Mother are domiciled within Cherokee Nation boundaries. The trial court stated, "The record does not include proof of notice of the Guardianship Petition to Cherokee Nation and Cherokee Nation alleges that it did not receive proper notice of the initial filing . . . ." The court noted that the matter had been in the District Court of Okfuskee County since 2010 and the case was at an advanced stage when Cherokee Nation filed the motion to transfer. The court found that "[e]vidence would not be adequately available in the Cherokee Nation District Court located in Tahlequah, OK . . . ." The court noted that neither Mother nor the GAL objected to the transfer.


¶8 Cherokee Nation appeals.


STANDARD OF REVIEW


¶9 The question of whether ICWA applies is a question of law, which we review de novo. In re M.H.C., 2016 OK 88, ¶ 7, ___ P.3d ___. "When ruling on a motion to transfer jurisdiction to tribal court, the party opposing transfer has to prove good cause to keep the case in state court by clear-and-convincing evidence." Id. "Because of the importance of Indian children to Indian tribes, as recognized by the Congressional ICWA policy statement, we will affirm a denial of transfer of jurisdiction to tribal court only upon a showing of 'good cause to the contrary.'" In re M.S., 2010 OK 46, ¶ 16, 237 P.3d 161.


ANALYSIS


¶10 When ICWA was enacted, it was intended to address and acknowledge "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." 25 U.S.C.A. § 1901(4). When it enacted ICWA, Congress declared:




[I]t is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.




25 U.S.C.A. § 1902.


¶11 ICWA gives an Indian tribe exclusive jurisdiction "over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe." 25 U.S.C.A. § 1911(a). ICWA states the following regarding Indian children who are not domiciled or residing on a reservation:




In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.




25 U.S.C.A. § 1911(b).


¶12 ICWA defines "foster care placement" as "'any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated.'" 25 U.S.C.A. § 1903(1)(i). This guardianship case is governed by this definition of foster care placement because Mother cannot have her children returned on demand as shown by the fact that she requested that the guardianship be terminated and her request was denied. CHS and KWS did not reside on a reservation and § 1911(b) therefore applies.


¶13 Cherokee Nation contends the trial court erred in finding good cause to deny its request to transfer the case to its tribal court. We conclude it was error to find that Guardians presented evidence rising to the required level of clear and convincing that there was good cause not to transfer this case to Cherokee Nation District Court.


¶14 In its order, the trial court cites that neither Mother nor the children are domiciled within the boundaries of Cherokee Nation. However, as Cherokee Nation points out, § 1911(b) applies only where "an Indian child [is] not domiciled or residing within the reservation of the Indian child's tribe." If an Indian child lives on a reservation, the child's tribe has exclusive jurisdiction pursuant to § 1911(a). Section 1911(b) specifically covers children who, as here, do not live on a reservation. As noted by the Oklahoma Supreme Court in In re M.S., the United States Supreme Court quoted with approval a Utah case stating that under ICWA, tribal courts are the preferred forum for Indian children who do not live on a reservation. In re M.S., 2010 OK 46, ¶ 15 (citing Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 52-53, 109 S. Ct. 1597, 1610, 104 L. Ed. 2d 29 (1989)).


¶15 The trial court here also noted that the case was at an advanced stage of the proceedings. The fact that Cherokee Nation did not intervene or file a motion to transfer earlier in the proceedings appears attributable to a lack of notice. Cherokee Nation claims it never received notice of the guardianship case. Although the ex parte emergency order of custody and guardianship stated that the attorney of record must issue notice to Cherokee Nation and the order appointing Guardians says notice was given, Cherokee Nation denied it ever received notice of the original guardianship proceeding and affirmatively claimed that it only received actual notice of the existing guardianship after Mother contacted the tribe. The guardianship order contains no certificate of service to Cherokee Nation and there is no "return receipt" of restricted delivery of notice of the guardianship proceedings and Cherokee Nation's right to intervene as required by 25 U.S.C. § 1911(a) and 10 O.S. § 40.4. The trial court acknowledges that "[t]he record does not include proof of notice of the Guardianship Petition to Cherokee Nation."


¶16 Section 1912 provides:




In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, that the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.




25 U.S.C.A. § 1912(a) (emphasis added). There is nothing in the record documenting issuance of notice to Cherokee Nation or its receipt of notice of the pending guardianship proceedings and its right to intervene. The trial court acknowledged the record's lack of required notice by Guardians to Cherokee Nation under ICWA.[1] The Oklahoma Indian Child Welfare Act[2] (Oklahoma Act) has its own notice provisions. Title 10 O.S.2011 § 40.4 states:




In all Indian child custody proceedings of the Oklahoma Indian Child Welfare Act, including voluntary court proceedings and review hearings, the court shall ensure that the district attorney or other person initiating the proceeding shall send notice to the parents or to the Indian custodians, if any, and to the tribe that is or may be the tribe of the Indian child, and to the appropriate Bureau of Indian Affairs area office, by certified mail return receipt requested. The notice shall be written in clear and understandable language and include the following information:


1. The name and tribal affiliation of the Indian child;
2. A copy of the petition by which the proceeding was initiated;
3. A statement of the rights of the biological parents or Indian custodians, and the Indian tribe:
a. to intervene in the proceeding,
b. to petition the court to transfer the proceeding to the tribal court of the Indian child, and
c. to request an additional twenty (20) days from receipt of notice to prepare for the proceeding; further extensions of time may be granted with court approval;
4. A statement of the potential legal consequences of an adjudication on the future custodial rights of the parents or Indian custodians;
5. A statement that if the parents or Indian custodians are unable to afford counsel, counsel will be appointed to represent them; and
6. A statement that tribal officials should keep confidential the information contained in the notice[.]




(Emphasis added.) Nothing shows that Guardians gave notice in accordance with the Oklahoma Act.


¶17 Notice is not the only requirement under ICWA before a foster care placement can be made. ICWA provides:




No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.




25 U.S.C.A. § 1912(e) (emphasis added). There is no indication that a qualified expert witness made any such finding pursuant to § 1912(e).


¶18 ICWA further provides:




Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.




25 U.S.C.A. § 1912(d) (emphasis added). Although Mother was in jail when the original petition was filed in September 2011, after she was acquitted and released from jail, she filed a motion to terminate the guardianship, or in the alternative, a motion for a reunification plan. Other than appointing a GAL for the children, the GAL making recommendations in 2014, and the trial court telling Mother to contact DVIS, it does not appear that any other efforts were made to provide Mother with remedial services to prevent the breakup of this Indian family. And, although the GAL's report is included in the record, there is no indication of active efforts made to reunite Mother and the children.


¶19 From the record before us, Guardians did not follow the notice provisions of ICWA and the Oklahoma Act and failed to satisfy the requirement that remedial and rehabilitative programs be implemented to prevent the breakup of the Indian family. We recognize that an extended period of time has passed since the original guardianship filings were made. However, Mother petitioned the court to terminate the guardianship a little over 14 months after the emergency order was filed and Cherokee Nation filed a motion to intervene after it learned of the case. The delays were beyond Cherokee Nation's control. See, e.g., In re M.S., 2010 OK 46, ¶ 28, 237 P.3d 161.


¶20 In Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 53-54, 109 S. Ct. 1597, 1611, 104 L. Ed. 2d 29 (1989), the United States Supreme Court dealt with an extended passage of time in an ICWA case:




We are not unaware that over three years have passed since the twin babies were born and placed in the Holyfield home, and that a court deciding their fate today is not writing on a blank slate in the same way it would have in January 1986. Three years' development of family ties cannot be undone, and a separation at this point would doubtless cause considerable pain.


Whatever feelings we might have as to where the twins should live, however, it is not for us to decide that question. We have been asked to decide the legal question of who should make the custody determination concerning these children--not what the outcome of that determination should be. The law places that decision in the hands of the Choctaw tribal court. Had the mandate of the ICWA been followed in 1986, of course, much potential anguish might have been avoided, and in any case the law cannot be applied so as automatically to "reward those who obtain custody, whether lawfully or otherwise, and maintain it during any ensuing (and protracted) litigation." It is not ours to say whether the trauma that might result from removing these children from their adoptive family should outweigh the interest of the Tribe--and perhaps the children themselves--in having them raised as part of the Choctaw community. Rather, "we must defer to the experience, wisdom, and compassion of the [Choctaw] tribal courts to fashion an appropriate remedy."




Id. (citations and footnote omitted). Although Holyfield involved children the Supreme Court determined were domiciled on a reservation, we find the reasoning regarding the passage of time applicable here. If ICWA had been followed in the initial stages of this guardianship proceeding, including the notice and active efforts provisions, the questions involving the extended period of time CHS and KWS have been in this guardianship might have been avoided.


¶21 Although Cherokee Nation asks this Court, in the alternative, to invalidate the guardianship as void for violation of ICWA provisions, we see the issue not as whether the guardianship should continue, but whether the issue should be decided in state district court or Cherokee Nation District Court. We reiterate that ICWA dictates that decisions such as this guardianship one should be made in the Cherokee Nation court unless Guardians presented clear and convincing evidence of good cause to the contrary. It is not enough to demonstrate a reason or reasons for keeping the case in state district court; it must be good cause shown to be both clear and convincing.[3] Guardians have not made that showing, and we therefore reverse the decision to deny the motion to transfer.


CONCLUSION


¶22 Guardians failed to present clear and convincing evidence of good cause to deny Cherokee Nation's motion to transfer. We reverse the decision of the trial court denying Cherokee Nation's motion to transfer and remand with directions to the trial court to transfer the case to Cherokee Nation District Court.




¶23 REVERSED AND REMANDED WITH DIRECTIONS.





GOODMAN, C.J., and FISCHER, J., concur.





FOOTNOTES




[1] Guardians present no separate proof of notice but rely on the guardianship order's recitation that notice was mailed.





[2] The Oklahoma Indian Child Welfare Act states:


The purpose of the Oklahoma Indian Child Welfare Act is the clarification of state policies and procedures regarding the implementation by the State of Oklahoma of the federal Indian Child Welfare Act, P.L. 95-608. It shall be the policy of the state to recognize that Indian tribes and nations have a valid governmental interest in Indian children regardless of whether or not said children are in the physical or legal custody of an Indian parent or Indian custodian at the time state proceedings are initiated. It shall be the policy of the state to cooperate fully with Indian tribes in Oklahoma in order to ensure that the intent and provisions of the federal Indian Child Welfare Act are enforced.


10 O.S.2011 § 40.1 (footnotes omitted). The Oklahoma Act "applies to all child custody proceedings involving any Indian child except the following: 1. A child custody proceeding arising from a divorce proceeding; or 2. A child custody proceeding arising from an adjudication of delinquency, unless there has been a request for termination of parental rights." 10 O.S.2011 § 40.3(A).





[3] We note, as the Supreme Court did in In re M.H.C., 2016 OK 88, ¶ 24, ___ P.3d ___, that effective December 12, 2016, the Bureau of Indian Affairs amended the 1979 BIA Guidelines to rewrite the 1979 definition of "good cause" for transfer to align it more closely with ICWA. Cherokee Nation here, as it did in M.H.C., submitted the 2016 BIA Guidelines as supplemental authority. Even if these were in effect and applicable, they would not change the outcome here.









 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2010 OK 46, 237 P.3d 161, IN THE MATTER OF: M.S.
Discussed at Length
 2016 OK 88, 381 P.3d 710, IN THE MATTER OF M.H.C.
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 40.1, Purpose - Policy of State
Cited
 10 O.S. 40.3, Application of Act - Exemptions - Determination of Indian Status
Cited
 10 O.S. 40.4, Involuntary Indian Child Custody Proceedings - Notice
Discussed